JOSEPH L. MORRISON, Appellant-Respondent, *v.* NATIONAL BROADCASTING COMPANY, INC., et al., Respondents-Appellants. et al., Defendant.

First Department, December 23, 1965.

*Roger Bryant Hunting* (*Margaret M. Hill* with him on the brief), for appellant-respondent.

*Raymond L. Falls, Jr.,* of counsel (*Daniel J. Givelber* with him on the brief; *Cahill, Gordon, Reindel & Ohl,* attorneys), for National Broadcasting Company, Inc., respondent-appellant

*Arthur Karger* of counsel (*Zoloto, Karger & Zurkow,* attorneys), for Jack Barry and others, respondents-appellants.

*Roger A. Schultz* for Pharmaceuticals, Incorporated, respondent-appellant.

BREITEL, J. P. This appeal involves a unique combination of operative facts. While the combination is unique and its novelty is the source of the difficulties in analysis, each of the facts is of a kind found in one or more of the recognized classifications in the law of torts.

Two questions are raised. The first is whether plaintiff's complaint states a cause of action, and the second is, if a claim is stated, whether it is barred by an applicable Statute of Limitations. The questions arise on cross appeals from three orders on as many motions by different defendants to dismiss the several causes of action stated in the complaint for legal insufficiency and bar by Statute of Limitations.[1]

On one ground or another the first, second, third and fifth causes of action were dismissed. The fourth cause of action

1. Rules Civ. Prac., rule 106, subd. 4; rule 107, subd. 5; cf. CPLR 3211, subd. (a), pars. 5, 7. Civ. Prac. Act, § 51, subd. 3; *id.* § 48, subd. 3; *id.* § 53; cf. CPLR 213, subd. 1, CPLR 214, subd. 5; *id.* 215. This action was begun before the effective date of CPLR.

addressed to a defendant never served was not the subject of attack. Only the first stated cause of action need be considered. As to this cause of action Special Term denied the motions as to insufficiency but, on reargument, granted them as to the bar of the Statute of Limitations. The dissenting opinion in this court by Mr. Justice STEUER would dismiss the first cause of action for legal insufficiency and does not find it necessary to reach the limitations question.

Plaintiff appeals from the dismissal of the first cause of action on the ground of the Statute of Limitations. Defendants cross-appeal from so much of the orders as denied dismissal on the ground of legal insufficiency. It is concluded that a valid claim is stated and that it is not time-barred. Hence, the orders should be modified to deny the motions to dismiss the first stated cause of action and should otherwise be affirmed.

The conduct concerning which plaintiff complains and with which he was involved occurred in 1958, although it had its genesis earlier. The public exposure to which the complaint refers occurred in 1959. This action was begun in 1961.

The gist of the claim is that defendants, associated in various ways in television, acting in concert, falsely represented to plaintiff, a young university academic, that they were conducting an authentic and honest contest on television, a "quiz" show, when in fact it was rigged. They made these misrepresentations in order to induce his participation as a contestant. As a result of his innocent participation and the public scandals thereafter occurring, plaintiff sustained harm to his good reputation and in particular was deprived of scholastic fellowships for which he had applied. For purposes of this appeal the description of the promotion and sponsorship of the program must be assumed to be true. As for the harm to plaintiff's reputation and prospects, and his innocent participation in the contest, for the present this too must be assumed to be true. The claim then charges defendants with corrupt purposes, lying to plaintiff to induce his innocent participation in a corrupt enterprise, as a result of which, on public exposure of the enterprise, plaintiff sustained harm to his reputation and academic prospects. In referring to corrupt purposes or enterprises it is not intended to suggest essential illegality but to import necessarily a violation of strong and prevalent moral standards with respect to competitive contests for material awards. The point is that everything that is not illegal is not therefore legitimate or sanctioned conduct.

Notably, each of the ultimate elements of the claim is a recognized element in the law of remedies for one sustaining harms.

Nevertheless, defendants contend that there is a failure to state a claim or cause of action because the separate elements do not all fall into any one classic category of tort but are found only in a combination of such categories. If this be right, then once again our jurisprudence would suffer a hardening of its categories making neither for sense nor justice and mark a return to a specious procedural formalism. (See, generally, Halpern: Intentional Torts and the Restatement, 7 Buffalo L. Rev. 7, esp. 7–17.)

In the first place, misplaced speculation about the applicability of " prima facie tort " doctrine to this case should be eliminated. That open-ended, noncategory, class or subclass of tort covers " disinterested malevolence,"[2] that is, the intentional malicious injury to another by otherwise lawful means without economic or social justification, but solely to harm the other (Prosser, Torts [3d ed.], p. 978). The elements in this case are distinguishable and stronger. The means used were not lawful or privileged, in the sense of affirmatively sanctioned conduct, but were intentional falsehood without benevolent purpose uttered to induce action by another to his detriment. The ultimate purpose and the scheme were corrupt, in the sense that no socially useful purpose but only gain by deceit was intended, although perhaps not " illegal." Defendants were engaged in operating a dishonest contest. Innocent contestants were being cheated of the chances for rewards they thought they had. The public was being deceived as to the kind of spectacle it was viewing. Defendants lied to plaintiff to induce his innocent participation. They were engaged in the pursuit of economic gain for themselves. Hence, this is no instance of otherwise lawfully privileged means being made actionable, because without economic or social justification, and because of the exclusive purpose to injure plaintiff, which are the identifying qualities of so-called " prima facie " tort.

Secondly, the claim is not for defamation, as defendants correctly argue, because defendants did not publish in any form anything derogatory to or concerning plaintiff. Instead, they put him in an unduly hazardous position where his reputation might be injured, not because this was their purpose, but because they did not care what happened to him in the pursuit of their purposes for selfish gain. Yet the harm sustained is exactly like that from defamation, albeit induced neither by slander nor libel. Thus, the causative acts are different from those

2. *Aikens* v. *Wisconsin*, 195 U. S. 194, 206 (per Holmes, J.). See, also, *American Bank & Trust Co.* v. *Federal Bank*, 256 U. S. 350, 358 (per Holmes, J.)

in defamation, but the effect, that is, harm to reputation, is the same.

Thirdly, the acts of defendants are not in deceit although they fit precisely all but one of the several elements of deceit. They fall short with respect to the nature of the harm sustained by plaintiff. There is knowing misrepresentation of fact, for the purpose of inducing plaintiff to act, upon which he relies. But the resulting harm is not the obtaining of plaintiff's property, or even his services; instead, it is the putting him into a hazardous false position, that is, of a cheater or corrupt contestant, to which he would not have consented if he had known the truth. While the harm to plaintiff was never intended, for defendants were gambling that there would be no exposure, the risk of harm to plaintiff's reputation was known or should have been known and therefore completely foreseeable to defendants (cf. *Ranney* v. *Habern Realty Corp.*, 281 App. Div. 278, 284, affd. 306 N. Y. 820). In this last respect there is a touch of an element in the law of negligence. But the claim is not for negligence, because while the harm may not have been intended, the act and effect of putting plaintiff into the false position of appearing to be a cheater was. It is not necessary that the intent in tort law be hostile (Prosser, *op. cit. supra*, p. 31; cf. Restatement, Torts 2d, § 13, Comment *c.*).

In short, and in repetition, every element in plaintiff's claim descriptive of defendants' acts, his reliance, and the harm sustained, are identifiable in the most ancient of the tort categories and in the law of negligence. What is more important, the elements of defendants' conduct and the harm to plaintiff fall neatly within general principles of law, even if not within any of the numbered forms of a form book. The intentional use of wrongful means and the intentional exposure of another to the known, unreasonable risk of harm, which results in such harm, provides classic basis for remedy. The harm must, of course, have been intended, foreseeable, or the "natural consequence" of the wrong. Even in intentional tort there is no liability for "remote" harms (Restatement, Torts 2d, § 435B; 13 N. Y. Jur., Damages, §§ 61–63; Prosser, *op cit., supra*, pp. 289, 748; cf., e.g., *Steitz* v. *Gifford*, 280 N. Y. 15, 20–21; *Milks* v. *McIver*, 264 N. Y. 267, 269–270). What troubled the lawyers in another day was not the intentional infliction of harm by wrongful means or for wrongful purpose, but harms inflicted without intention or by otherwise lawfully privileged conduct.

The root of the present trouble is that every kind of wrongful conduct, like lying, is not actionable per se. The analysis

should not stop short, however, but must continue by examination of the purpose for which one lies, the harm produced by the lie, and whether the harm was foreseeable or the natural consequence of the wrong. The problem may also be looked at conversely. If there be no remedy, then the law would be saying in effect that one is free to lie to another as distinguished from lying about another (which is defamation), for one's private gain, so long as the consequence of the lie is not to take the victim's property (which is deceit), but rather to expose him and his reputation to likely injury.

In passing it should be observed that criminal statutes which must be explicitly directed to conduct forbidden are not involved. Rather this case explores the common-law reach in providing a remedy for foreseeable harms resulting from intentional conduct.

In the late nineteenth and early twentieth centuries a great controversy raged over whether there was a law of tort based on general principles or only a law of torts based on specific remedies which could not be rationally correlated but only historically explained. Pollock in England was the chief exponent for the view of a general theory of tort and Salmond was the chief exponent for the contrary view (see Pollock, Torts [15th ed.], pp. 16–17 and Salmond, Torts [12th ed.], pp. 17–19, 20–31; see, also, *Advance Music Corp.* v. *American Tobacco Co.*, 296 N. Y. 79, 83–84). It is significant that the later editors of Salmond retreat from his hard position that " every plaintiff must bring his case under one of the recognized heads of tort." (Salmond, *op. cit., supra,* at pp. 17–19.) And there is no doubt that the generality of Pollock's position must be a bit restrained, if history is not to be ignored (Prosser, *op cit., supra,* p. 4).

But there is no need to join in the overseas controversy. The Court of Appeals in the *Advance Music* case, (*supra*), resolved the dispute for this State. After discussing the Pollock-Salmond controversy, Chief Judge Loughran had this to say (p. 84) : " This difference over the general principles of liability in tort was composed for us in *Opera on Tour, Inc.,* v. *Weber* (285 N. Y. 348). We there adopted from *Aikens* v. *Wisconsin* [195 U. S. 194, esp. 204, per Holmes, J.] the declaration that ' *prima facie,* the intentional infliction of temporal damage is a cause of action, which * * * requires a justification if the defendant is to escape.' "

Then, dropping the commas around the words " prima facie," a new name was created in this State for not such a new tort,

the Chief Judge saying: ''The above second cause of action alleges such a prima facie tort and, therefore, is sufficient in law on its face.''

It is not important to the present analysis that the so-called '' prima facie '' tort was thus rationalized. It is important that the court aligned itself with the Holmes-Pollock view that tort concepts of liability did not depend solely upon procedural categories, important as they were, and that intentional harm, without excuse or justification, was actionable, *simpliciter*. The extension of these principles is well beyond what has been since dubbed the '' prima facie '' tort. Indeed, the subclassification of '' prima facie '' tort has perhaps caused more trouble in understanding than what it was supposed to clarify. (See, e.g., *Ruza* v. *Ruza*, 286 App. Div. 767; cf. *Brandt* v. *Winchell*, 286 App. Div. 249, 250, suggesting that '' prima facie '' tort is concerned only with loss to plaintiff's occupation or business; but, see, *Brandt* v. *Winchell*, 283 App. Div. 338, 342, where the generalization was limited to '' ordinarily.'' See, also, *Brandt* v. *Winchell*, 3 N Y 2d 628, affg. 286 App. Div. 249.) What should be clear enough is that '' prima facie '' tort does not embrace all intentional tort outside the classic categories of intentional torts.

Even before the *Advance Music* case, this court had no trouble in recognizing as actionable an intentional wrong that did not classify into any of the formal categories. In *Gale* v. *Ryan* (263 App. Div. 76) the complaint charged defendants, for their own tax evasion purposes, and without hostile intention toward plaintiff, with having given false information to the revenue authorities concerning plaintiff's earnings. As a result, plaintiff allegedly was investigated and sustained damage because of these false statements. The court, recognizing that the claim did not come within any of the classic tort categories, analogized it to various causes of action for injurious falsehood and sustained the complaint. It quoted (p. 78) from *Ratcliffe* v. *Evans* ([1892] 2 Q. B. 524, 527–528) to the effect: '' That an action will lie for written or oral falsehoods, not actionable *per se* nor even dafamatory, where they are maliciously published, where they are calculated in the ordinary course of things to produce, and where they do produce, actual damage, is established law. Such an action is not one of libel or of slander, but an action on the case for damage wilfully and intentionally done without just occasion or excuse, analogous to an action for slander of title.''

The present case is similar to the *Gale* case because the harm did not flow directly from the false position as a corrupt con-

testant into which plaintiff was put, but rather from the public exposure that was likely to follow (see, generally, 22 Am. Jur. 2d, Damages, § 81). In the *Gale* case, although investigation may have been a little more likely than exposure in this case, the harm similarly did not flow directly from the false statements to the revenue officers but only from the ensuing investigation.

The *Gale* case is not the only one in which this court refused to restrict itself to classic categories or to " prima facie " tort in sustaining a pleading to recover damages for false words intentionally uttered and resulting in harm to plaintiffs. Thus, in *Penn-Ohio Steel Corp.* v. *Allis-Chalmers Mfg. Co.* (7 A D 2d 441, 443–444), the court, per M. M. FRANK, J., said:

" The parties to the litigation agree that the complaint does not charge a conventional tort, such as malicious prosecution or defamation. Under the circumstances, the defendant argues, the only theory upon which to predicate the action is prima facie tort and under the rules of pleading applicable thereto, the complaint is insufficient.

" On the other hand, the plaintiffs take the position that the action is not one for prima facie tort, because such an action in this context, they say, would be based upon a truthful statement made maliciously or with an intention to inflict harm, whereas, here the alleged statements were untrue.

" Whether the cause of action pleaded should or should not be denominated as one for a prima facie tort is of no moment, for the plaintiffs' right to maintain it does not hinge upon a label. (*Knapp Engraving* v. *Keystone Photo,* 1 A D 2d 170, 172.)

" It seems inadvisable to lump all malicious and intentional harms into a grab bag labeled ' prima facie tort ', especially since it is impossible to tabulate the infinite varieties of misconduct that give rise to actionable wrongs. It is generally accepted that ' There is no necessity whatever that a tort must have a name. New and nameless torts are being recognized constantly '. (Prosser, Torts [2d ed.], p. 3.)

" What is important is that there must be the infliction of intentional harm, resulting in damage, without legal excuses or justification. (See *Aikens* v. *Wisconsin,* 195 U. S. 194, 204; *Rager* v. *McCloskey,* 305 N. Y. 75, 81; *Ruza* v. *Ruza,* 286 App. Div. 767, 769; *Knapp Engraving* v. *Keystone Photo, supra.*)

" The utterance or furnishing of false and misleading information may be actionable if done maliciously or with the intention to harm another, or so recklessly and without regard to its consequences, that a reasonably prudent person should anticipate that damage to another will naturally follow. It has been

occasionally suggested that such an action is within the orbit of prima facie tort. There is no valid support in law for the suggestion. The tort of injurious or intentional falsehood finds its genesis in legal history long, long before the comparatively recent development in the area of intentional harms, which possibly have been misdescribed as 'prima facie torts'. It may well be that much of the difficulty encountered in these cases emanates from the indiscriminate use of labels. If, therefore, one must be attached, perhaps other terms such as 'injurious falsehood' (86 C. J. S., Torts, § 48; Salmond, Torts [11th ed.], pp. 703–704, or an 'action for damage resulting from intentional falsehood' (*Rager* v. *McCloskey*, 305 N. Y. 75, 80, *supra*) may be better."

Mr. Justice FRANK well summarized the grounds for liability to be found in the instant pleading, and demonstrated the inapplicability of a parochial adherence to ancient forms of action and the futility of manipulating labels rather than concepts in the law of torts.

There has been some discussion whether plaintiff's reputation could have been harmed, turning on whether it was reasonable, and therefore credible, for the public to generalize that the corruption exposed applied to all rather than only to some of the contestants in the rigged contest. That is a question of fact. The pleading alleges that it happened. The proof of the pleading may well be another matter. Then it will be time enough to speak of what plaintiff has shown. At this stage he succeeds merely by alleging, so long as he alleges enough.

Sufficient has already been said to suggest the answer to the limitations problem. Only if plaintiff were suing in defamation would the one-year statute for libel or slander apply (Civ. Prac. Act, § 51, subd. 3). [3] The acts charged here are neither libel nor slander; only the harm which resulted was the same as that in the law of defamation. Consequently, the applicable Statute of Limitations is the six-year statute covering personal injuries other than those covered elsewhere in the limitation statutes under the Civil Practice Act, which controlled when this action was started in 1961 (Civ. Prac. Act, § 48, subd. 3; cf. § 53). The injury was a personal one because a harm to reputation accomplished by intentional falsehood (Gen. Constr. Law, § 37-a).

---

3. CPLR 215 (subd. 3), with reference to false words, need not be considered since the CPLR was not applicable to the time limitations involved in this case. Its enactment does suggest, however, that subdivision 3 of section 51 of the Civil Practice Act never applied to this kind of action.

It has been assumed by most in the discussion of this case that plaintiff has the burden of alleging special damages. If he does, the allegations are somewhat deficient but only in a very technical sense; and if so, these could and should be easily cured by allowing him to amend.[4] But plaintiff's claim should not depend upon the allegation and proof of special damages. The reason is that the harm to reputation alleged here is exactly of the kind for which in the law of defamation recovery is allowed in the way of general damages. In short, on plaintiff's allegations he was in effect exposed to the charge of being a cheat, that is, a corrupt conniver in a scheme to divert rewards in a contest from those entitled to them to those who cheated. Put another way: defendants never said of plaintiff that he was a cheater, they only caused him to appear to be one. It hardly requires additional proof that this is destructive of plaintiff's standing or prospects as a university teacher of the young.

The situation should not be confused with that kind of action on the case addressed to specific economic harms or the '' prima facie tort '' doctrine, where other nonintentional conduct is involved or where otherwise lawfully privileged means are used. Then the policy of the law is very strong in not hobbling privileged or morally innocent conduct unless it results in specifically established economic harm. On the other hand, where the conduct is purposively corrupt by conventional standards, intentional as to consequences, or utilizes vicious means (again by conventional standards), the law will allow general recovery for foreseeable harm to established protected interests, such as reputation in trade or occupation, reputation for chastity or honesty, consortium, and, at one time, the love and affection of another.

If it be true, as he alleges, that plaintiff, a young academic at the beginning of his professional university career, was tarred as a corrupt conniver with others in a rigged television contest, as a result of defendants' misrepresentations to him, the harm to his professional reputation would be great indeed. Paradoxically, the greater the harm, the less likely would he be able to show future prospects that never materialized because of the scandal associated with his name. Thus the principles implicit in this case associate, as to damages, with those found in the law of defamation, just as in other respects the appli-

4. Plaintiff's allegations of special damage do not allege that he would have received either of two fellowships for which he had applied, except for the scandal, but only that he had reason to believe that he would receive one of them. (See *Zausner* v. *Fotochrome, Inc.*, 18 A D 2d 649.)

cable principles are found in the law of deceit, in the law of injurious falsehood, and in one respect, in the law of negligence. The justification for allowing general damages is the practical recognition that harm normally occurs from a type of conduct even if specific damages are not provable, while general damages are not justified where there is no likelihood or practical presumption that the wrong will result in harm (Restatement, Torts, § 904, incl. Comments *a* and *b*; 22 Am. Jur. 2d, Damages, §§ 15, 271–272). A bad reason for requiring allegation and proof of special damages is to discourage " new " causes of action. So too, because only " older " forms of action allowed recovery for general damages.

It is especially interesting that *Ratcliffe* v. *Evans* ([1892] 2 Q. B. 524, *supra*) upon which this court relied in the *Gale* v. *Ryan* case (*supra*) contains a fine analysis of the applicable rules in determining whether or not general damages will be allowed or whether the victim of a tort will be confined to the damages he can allege and prove specifically. The English court, per the distinguished BOWEN, L. J., after discussing the fluctuating use of the terms " general " and " special damages," observed that general damages will be allowed wherever in the course of experience the loss is a direct and natural consequence of the wrongdoing. More important, however, is that, in discussing recovery for the noncategory tort of injurious falsehood, the court made it clear that general damages might be allowed. In this connection it analogized the rule of damages in defamation, not because injurious falsehood was like defamation but because the harm sustained is like that resulting from defamation. To support this analysis the court analyzed in detail the different kinds of defamation per se and those *per quod* which require the allegation and proof of special damages. It summarized its conclusions as follows (pp. 532–533): " In all actions accordingly on the case where the damage actually done is the gist of the action, the character of the acts themselves which produce the damage, and the circumstances under which these acts are done, must regulate the degree of certainty and particularity with which the damage done ought to be stated and proved. As much certainty and particularity must be insisted on, both in pleading and proof of damage, as is reasonable, having regard to the circumstances and to the nature of the acts themselves by which the damage is done. To insist upon less would be to relax old and intelligible principles. To insist upon more would be the vainest pedantry."

In *Rager* v. *McCloskey* (305 N. Y. 75, 81) the Court of Appeals, per FULD, J., cited the *Ratcliffe* case with approval.

and seemed to approve the test for general damages as damages to be " calculated in the ordinary course of events," with specific reference to harm to reputation.

In conclusion, it should be observed that the classical categories of tort were merely classifications, and incomplete ones at that. Omitted were all the law of negligence, the intentional tort committed by lawful means but solely out of malevolence (the " prima facie " tort), and innumerable other remediable wrongs wrought in the later common-law years from the formless mold of " action on the case," out of which even the action on assumpsit had to arise because the " contract " categories had hardened into debt, covenant, and the like. This history should create no problems for a modern court but, instead, provides modes of solution, especially so where the claim rests on elements each of which, considered separately, has been recognized as an operative fact in the law of torts. Nor should a slavish formalism apply to the rule of damages any more than to the statement of a substantive claim. In either case, a rule should stand or fall because of its reason or lack of it.

Accordingly, the orders should be modified, on the law, to the extent of denying defendants' motions to dismiss the first cause of action and should otherwise be affirmed, with costs and disbursements to abide the event.

EAGER, J. (dissenting in part). I dissent only insofar as the majority holds that allegations and proof of special damages are not essential to plaintiff's cause of action; and otherwise I concur fully in the well-reasoned opinion of the Justice presiding. The defendants are properly to be held liable to plaintiff to the extent that he has been damaged by the " natural consequences " of their deliberate and unjustified acts. I do not agree, however, that harm to plaintiff's reputation resulting from the alleged wrongful acts, if any, would be " exactly of the kind for which in the law of defamation recovery is allowed in way of general damages ". (Majority opinion, p. 293.)

Under the circumstances, I would hold that general allegations that plaintiff has been damaged in his reputation are alone insufficient to sustain the complaint. (See *Penn-Ohio Steel Corp.* v. *Allis-Chalmers Mfg. Co.*, 7 A D 2d 441.) The alleged wrongful acts do not relate and are not directed to anything plaintiff has done or contemplates doing in the matter of his profession or occupation as a teacher or associate professor and, thus, injury to his reputation as such is not inferred. Under these circumstances, a pleading of special damages is required. (See *Sack* v. *New York Times Co.*, 56 N. Y. S. 2d

794, affd. 270 App. Div. 401; *Shakun* v. *Sadinoff*, 272 App. Div. 721.) And this is so even if the acts are considered as having the effect of impliedly labelling the plaintiff as a cheat, a crook, or dishonest. (See *Jordan* v. *Lewis*, 20 A D 2d 773, 774; *Gurtler* v. *Union Parts Mfg. Co.*, 285 App. Div. 643, 646, affd. 1 N Y 2d 5; *Villemin* v. *Brown*, 193 App. Div. 777; *Hofstadter* v. *Bienstock*, 213 App. Div. 807; *Hume* v. *Kusche*, 42 Misc. 414.) The complaint must be dismissed for failure to plead special damages (see, further, *Rager* v. *McCloskey*, 305 N. Y. 75), but I would give plaintiff the opportunity to serve an amended pleading.

STEUER, J. (dissenting). The first cause of action alleges that defendant NBC put on a television show called "21". Defendants, who, in addition to NBC, were the sponsors and producers of the show, represented to plaintiff and the public that "21" was a quiz program conducted honestly and without prior rehearsal or assistance to any contestant. Plaintiff, in reliance on those representations, appeared on the program on April 14, 21 and 28, 1958. Actually, the program was not honestly conducted and, to the knowledge of defendants, information as to answers was given to certain contestants in advance. This fact was later discovered and became public knowledge. It is alleged that thereafter the public assumed from plaintiff's appearance on the program that he was a participant in the fraud, which injured his reputation. It is further alleged that subsequently two applications for scholarships which plaintiff had made, one of which he had reason to believe would be awarded to him, were refused.

The question is whether these facts constitute a cause of action. Concededly they do not fall within any of the accepted categories. Neither libel nor slander can be claimed because no statement derogatory or otherwise concerning plaintiff is charged. Even though plaintiff was deceived by the implied representation that the program was honestly and fairly conducted, that deceit did not cause him any damage. What is alleged to have injured him is the unwarranted assumption by the public that, because plaintiff was a participant in a show which deliberately fooled the public, he was one of those who was misleading them.

It is undeniable that the action of the defendants in palming off this program as a bona fide contest and exaggerating the abilities of the favored contestants was a hoax on the public. But aside from inducing them to listen to the program it is

difficult to see how any member of the public was injured or how anyone was defrauded. Naturally some persons would be resentful and form unfavorable opinions of the perpetrators of the hoax, including those who took part in the supposed contest. But it is quite another matter to assume that the public would form the same opinion of a person who appeared as a legitimate contestant.

Plaintiff's claim is based on the contention that the public did not distinguish among contestants and wrongfully assumed that all were parties to the deception. If this contention is invalid, plaintiff has not shown that he suffered. If it is valid, he has not shown that any act or word of the defendants is responsible for the public's false assumption. So what plaintiff apparently relies on is that the public is prone to accept guilt by association. It is submitted that neither these defendants nor anyone else should be held responsible for this human failing.

The majority rests its decision on the finding that this is an action on the case of a hitherto unspecified character. Undoubtedly at times new inventions as well as new customs give rise to injuries in a manner not before experienced. And the absence of precise precedent is no bar to recovery. Were this a situation peculiar to television, an argument could possibly be so based. However, the principles, and indeed the facts, have no peculiar relationship to television, except possibly in the extent of the exposure, which is here irrelevant. The exact situation could have arisen in a framework quite devoid of the factor of television. An old-fashioned spelling bee, or a tennis tournament or other athletic contest, would provide a factual background with the same legal consequences. In fact, the complaint seeks to equate the situation with the celebrated World Series Black Sox scandal, without however extending the analogy to the factual result which would negate recovery here, namely, that the innocent members of the guilty ball club continued in the sport without obloquy or any diminution in their popularity.

While an action on the case is designed to cover situations where a wrong has been committed and no existing remedy is provided for it (see Case, Action on, 14 C. J. S., p. 3) yet it is not entirely amorphous. There are some rules. It does not apply where conventional actions exist or where force, the usual damaging agent, is present (see C. J. S., *op. cit.*, § 3). An action on the case may accrue from an injury to reputation, but only if the false utterance is made maliciously with intent to harm

the plaintiff (*Al Raschid* v. *News Syndicate Co.*, 265 N. Y. 1; *Penn-Ohio Steel Corp.* v. *Allis-Chalmers Mfg. Co.*, 7 A D 2d 441). No such element is here present.

Special Term regarded the action as one for defamation and hence barred by limitations. Whether it is so barred is not considered. On this appeal, contrary to the stand taken below, plaintiff has discarded his description of defamation, and specifically negates that the action is in any category of defamation. This being so, limitations has no application. Had, however, the case appeared here in the guise which it assumed at Special Term, a very respectable argument, not now necessary to consider, that the case is barred by the one-year Statute of Limitations, could be made.

The orders should be modified, on the law, so as to reverse the denial of that branch of defendants' motions which sought a dismissal of the first cause of action for insufficiency and the motions granted and, as thus modified, the orders should be affirmed.

RABIN and VALENTE, JJ., concur with BREITEL, J. P.; EAGER, J., dissents in part in opinion; STEUER, J., dissents in opinion.

Orders, entered on October 2, 1963, November 15, 1963 and December 5, 1963, so far as appealed from, modified, on the law, to the extent of denying defendants' motions to dismiss the first cause of action, and, as so modified, affirmed, with $30 costs and disbursements to abide the event. Settle order on notice.