John Anthony SMITH, Plaintiff,

v.

The FIDELITY MUTUAL LIFE INSURANCE COMPANY, Richard H. Hollenberg, G. Glay Von Seldenick and Roy D. Kent, Defendants.

No. 77 Civ. 2536 (CHT).

United States District Court,
S. D. New York.

Jan. 31, 1978.

---

9. *See* Texas Penal Code § 43.23(a)(3) and § 43.24(b)(3).

Turk, Marsh, Kelly & Hoare, New York City, for plaintiff; John Anthony Smith, Joseph P. Giasi, Jr., New York City, of counsel.

Patterson, Belknap, Webb & Tyler, New York City, for defendants; Thomas C. Morrison, Gene M. Bauer, New York City, of counsel.

## MEMORANDUM

TENNEY, District Judge.

In the aftermath of a ten-year litigational history, the plaintiff, John Anthony Smith ("Smith"), an attorney, is suing defendants The Fidelity Mutual Life Insurance Company ("Fidelity") and Richard H. Hollenberg, G. Clay Von Seldenick and Roy D. Kent ("the individual defendants") on three counts. The action is before this Court on diversity grounds. Smith charges Fidelity with commission of prima facie tort; in the alternative he claims damages for breach of a covenant between himself and Fidelity. In the third count the individual defendants, who are officers of Fidelity, are sued alternatively to Fidelity, the claim resting on a theory of tortious interference with the contractual relationship between Smith and Fidelity. All of the defendants have moved pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the two counts which rest on the theories of prima facie tort and tortious interference with contractual relationships.[1] For the reasons stated below the motion addressed to the theory of prima facie tort is denied; that in respect of tortious interference with contract is granted.

### Relationship Between the Parties

The three alternative claims for relief are rooted in a suit commenced by Fidelity in 1973 in which Smith was named as a defendant. Smith had represented two clients who, in 1968, settled actions then pending between themselves and Fidelity. As part of the settlement, Smith acquired "mere record title," Plaintiff's Memorandum of Law, Preliminary Statement, to an undivided one-sixth interest in a parcel of New York real property mortgaged to Fi-

---

1. Fidelity does not, in this motion, contest the breach-of-covenant claim.

delity. In 1970 Fidelity entered into an agreement with the owners of the property, including Smith as a nominal owner, to extend the debt and mortgage. That agreement contained a paragraph, the full test of which is set out in the margin,[2] which Smith contends was a covenant not to sue him in any action concerning the property. Nevertheless, Fidelity did institute suit on the debt and mortgage and on other claims related to the property and named Smith as one of the defendants, although he had by then ceased to have any interest, nominal or otherwise, in the property.[3]

Smith defended himself pro se in this 1973 action, and on December 23, 1976, judgment was entered in his favor exonerating him from any liability vis-a-vis Fidelity's claims. Smith is now suing for the cost of defending himself and for punitive damages, alleging that the defendants conspired to name him as a party to their suit despite their knowledge of the covenant not to sue and of Smith's original status as a mere title holder of record. He charges that in so conspiring the defendants were either:

A. grossly negligent; or

B. motivated by both:

(i) a disinterested malice; and

(ii) a desire and intent to intimidate plaintiff and to thereby disable him from assisting, or to disincline him to assist, other defendants in the Foreclosure Action on whose behalf he had previously acted and to obtain his support in said action for Fidelity Mutual; or all of these.

Amended Complaint ¶ 26. Defendants maintain that Smith has not stated a legally sufficient claim in either prima facie tort or tortious interference by the individual defendants with a contractual relationship.

### Prima Facie Tort

In 1946 the New York Court of Appeals reaffirmed its commitment to the common law principle that the intentional infliction of temporal damage, without justification, is a tort cognizable at law whether or not it fits classical tort categories, *Advance Music Corp. v. American Tobacco Co.*, 296 N.Y. 79, 70 N.E.2d 401 (1946), and adopted the phrase "prima facie tort" as a convenient rubric for this essentially amorphous "non-category" of intentional wrong. However, the doctrine of prima facie tort quickly began to develop formal boundaries, and its use was carefully limited and delineated by New York courts. In a leading New York case the theory was expounded as follows:

**2.** The following is referred to by Smith as "¶ SIXTH of the Mortgage Consolidation and Extension Agreement in its entirety." Amended Complaint ¶ 14. Defendants do not in their papers dispute that statement.

SIXTH: The Mortgagee, for itself and its successors and assigns, hereby agrees that it will not institute any action at law or in equity against the Owners, or any of them, or the respective successors and assigns of the Owners, or any of them, for the payment of the principal sum from time to time hereafter owed and due under the Mortgage, nor for any interest due or hereafter become due thereon, nor for any other sum of money which is or may hereafter be payable under the Mortgage or the Note, nor seek any other personal judgment against the Owners, or any of them, or the respective successors and assigns of the Owners or any of them, and will not seek against the Owners, or any of them, or the respective successors and assigns of the Owners, or any of them, any judgment for deficiency in any action to foreclose the Mortgage; provided, however, that nothing in this paragraph contained shall otherwise be, or be deemed to be, a release or impairment of the indebtedness secured by the Mortgage or the lien thereof upon the mortgaged premises, or shall preclude the Mortgagee from foreclosing the Mortgage in case of any default hereunder, or from enforcing any of its rights hereunder, except as by this paragraph precluded, or shall prejudice the rights of the Mortgagee, its successors and assigns, under the Note and the Mortgage, or either of these, as against any subsequent owner of the mortgaged premises, or as against any other individual, corporation or association now or hereafter liable for the indebtedness secured by the Mortgage.

**3.** Fidelity's suit sought foreclosure of the mortgage, recovery of monies allegedly received by the owners through the cancellation of leases, reimbursement of taxes and other charges allegedly resulting from the failure to enforce the leases, and recovery for damages to Fidelity's security allegedly resulting from material alterations made to the property.

The key to prima facie tort is the infliction of intentional harm, resulting in damage, without excuse or justification, by an act or a series of acts which would otherwise be lawful. The need for the doctrine of prima facie tort arises only because the specific acts relied upon—and which it is asserted caused the injury— are not, in the absence of the intention to harm, tortious, unlawful, and therefore, actionable. . . .

Thus, where specific torts account for all the damages sustained, whether provable as general damages or pleadable and provable as special damages, prima facie tort does not lie.

*Ruza v. Ruza,* 286 App.Div. 767, 769–70, 146 N.Y.S.2d 808, 811 (1st Dep't 1955); *see Horwitt v. Movado Watch Agency, Inc.,* 62 F.R.D. 5 (S.D.N.Y.1974); *Carnival Co. v. Metro-Goldwyn-Mayer, Inc.,* 23 A.D.2d 75, 258 N.Y.S.2d 110 (1st Dep't 1965). *But see Sheppard v. Coopers' Inc.,* 156 N.Y.S.2d 391 (Sup.Ct.), *aff'd,* 2 A.D.2d 881, 157 N.Y.S.2d 898 (1st Dep't 1956).[4]

Citing the narrow interpretation of prima facie tort historically endorsed by New York courts, Fidelity contends that Smith has merely relabelled what is essentially a deficient claim sounding in malicious prosecution and therefore cannot prevail.[5] However, it appears that the law has changed in New York. In *Board of Education v. Farmingdale Classroom Teachers, Local 1889,* 38 N.Y.2d 397, 380 N.Y.S.2d 635, 343 N.E.2d 278 (1975) (*"Farmingdale"*), the New York Court of Appeals permitted a pleading alleging the intentional infliction of economic harm as an alternative cause of action to one alleging abuse of process. In that opinion, the court addressed itself to the concept of prima facie tort:

Lastly, we conclude that the third cause of action for prima facie tort is sufficient insofar as it refers to the intentional infliction of economic harm by forcing plaintiff to hire a great many substitutes. It does not matter whether the action is denominated a so-called "prima facie tort" or is called something else . . . . [T]hat the term is merely an inaccurate mislabel and the plaintiff's right to maintain an action does not hinge on the label used . . . . [W]henever there is an intentional infliction of economic damage, without excuse or justification, we will eschew formalism and recognize the existence of a cause of action.

The Appellate Division majority in this case concluded that a cause of action in prima facie tort cannot exist where all the damages sustained are attributable to a specific recognized tort . . . . It is our view that a modern system of procedure, one which permits alternative pleading, should not blindly prohibit that pleading in the area of prima facie tort. Of course, double recoveries will not be allowed, and once a traditional tort has been established the allegation with respect to prima facie tort will be rendered academic. *Nevertheless there may be instances where the traditional tort cause of action will fail and plaintiff should be permitted to assert this alternative claim.*

*Id.* at 405–06, 380 N.Y.S.2d at 644–45, 343 N.E.2d at 284–85 (citations omitted) (emphasis added).

This position was reaffirmed in *Clark v. New York Telephone Co.,* 41 N.Y.2d 1069, 396 N.Y.S.2d 177, 364 N.E.2d 841 (1977). There, however, the cause of action denominated prima facie tort was based on underlying acts which constituted

---

**4.** It has also been held that in formal prima facie tort special damages must be pleaded, *Brandt v. Winchell,* 286 App.Div. 249, 141 N.Y.S.2d 674 (1st Dep't 1955), and that only actual damages may be recovered. *Miller v. Jamaica Savings Bank,* 50 A.D.2d 865, 377 N.Y.S.2d 89 (2d Dep't 1975). It has even been stated that prima facie tort will not lie where a self-serving motive co-exists with the malicious will to injure the plaintiff. *RKO–Stanley Warner Thea-*

*tres, Inc. v. Century Circuit, Inc.,* 37 A.D.2d 828, 325 N.Y.S.2d 270 (1st Dep't 1971).

**5.** Malicious prosecution will not lie in New York where, as here, there has been no interference with the person or property of the plaintiff through use of a provisional remedy or of injunctive relief. *Williams v. Williams,* 23 N.Y.2d 592, 298 N.Y.S.2d 473 (1969).

defamation. Significantly, the defamation statute of limitations had already run. Therefore, the Court of Appeals declined to allow the alternative pleading in prima facie tort which would have avoided the time bar, but did so "[w]ithout intending to suggest any retreat from acceptance of the existence of a cause of action, in proper circumstances, for intentional injury without lawful excuse or justification," citing *Farmingdale. Id.* at 1070, 396 N.Y.S.2d at 177–78, 364 N.E.2d at 842. It would seem, then, that New York will entertain a cause of action which resembles, but falls short of all the requirements for, a formal category of intentional tort, provided that the traditional tort which the underlying acts most closely fit would not be time-barred. *See Mishkin v. Dormer,* 57 A.D.2d 795, 395 N.Y. S.2d 452 (1st Dep't 1977).[6] Since there is no limitations problem presented in this case,

the Court concludes that Smith's first cause of action labelled "prima facie tort" states a claim upon which relief could be granted and accordingly Fidelity's motion to dismiss is denied.

### Tortious Interference With Contractual Relations

 Smith has alleged that the three individual defendants named in this complaint, all officers of Fidelity, committed a tort against Smith "by giving advice to Fidelity Mutual and in other ways not yet known to plaintiff [acting] in furtherance of, a common plan, undertaking and conspiracy . . . to induce Fidelity Mutual to name plaintiff as a defendant," Amended Complaint ¶ 25, in other words, to breach its covenant with the plaintiff. It is

6. Both the reexpansion of this "generally actionable" tort and this Court's conclusion as to its current contours are foreshadowed in the opinions in *Morrison v. National Broadcasting Co.,* 24 A.D.2d 284, 266 N.Y.S.2d 406 (1st Dep't 1965), *rev'd,* 19 N.Y.2d 453, 280 N.Y.S.2d 641, 227 N.E.2d 572 (1967). In *Morrison,* the plaintiff was a young academic who had been an innocent contestant on a rigged television quiz show. As a result, his reputation suffered, and certain professional opportunities were closed to him. However, his claim did not make out the classical elements of defamation, for although the injury resembled the result of that tort there had not been publication of defamatory comment: defendants had merely placed him in a position where the damage could be done by a skeptical public. Furthermore, the statute of limitations for defamation had already run at the point suit was initiated.

In the opinion written for the Appellate Division, First Department, then-Presiding Justice Breitel held that there was a valid claim of injury despite the fact that it did not fit any classical tort, *including* the by-then-contracted and indurate species called "prima facie tort," which Justice Breitel defined as "[t]hat openended, non-category, class or sub-class of tort [which] covers 'disinterested malevolence,' that is, the intentional malicious injury to another by otherwise lawful means without economic or social justification, but solely to harm the other." *Id.* at 287, 266 N.Y.S.2d at 409 (citation and footnote omitted). (Certainly the tortious acts in *Morrison* did not fit that description at all; the defendants were there primarily interested in their own economic gain and nothing suggested malice of any kind directed toward the plaintiff.) As Justice Breitel saw it, there was actionable wrong in *Morrison* broad-

er and more generalized than "prima facie tort": what was actionable was the intentional, foreseeable infliction of harm without justification. *Id.* at 290, 266 N.Y.S.2d at 412.

When the case reached the New York Court of Appeals, now-Chief Judge Breitel had assumed a seat on that bench but did not participate in the decision. An otherwise unanimous court reversed, determining on the basis of the type of harm sustained, *i. e.,* damage to reputation, that plaintiff's "cause of action must be deemed to fall within the ambit of tortious injury which sounds in defamation," *Morrison, supra,* 19 N.Y.2d at 459, 280 N.Y.S.2d at 644, 227 N.E.2d at 574, and thus was barred by the statute of limitations by which the legislature had circumscribed the remedy for any such injury. That the limitations problem was especially significant to the court is unquestionable, for the opinion took pains to state that a "contrary result might very well enable plaintiffs in libel and slander cases to circumvent the otherwise short limitations period by the simple expedient of 'redescribing [the] defamation action to fit this new "noncategory"' of intentional wrong." *Id.* at 459, 280 N.Y.S.2d at 645, 227 N.E.2d at 574 (citation omitted).

Ten years later, however, a unanimous New York Court of Appeals explicitly adopted Chief Judge Breitel's views on prima facie and generalized tort as expressed in the *Morrison* Appellate Division opinion. *Board of Education v. Farmingdale, supra,* 38 N.Y.S.2d 406 n. *, 380 N.Y.S.2d 645 n. *, 343 N.E.2d 284 n. *. This affirmation, juxtaposed with the circumstances and opinion in *Clark, supra,* indicate that time limitations, not labels, are of major importance in this area.

the law in New York that an officer of a corporation acting in its behalf and within the scope of his authority cannot be personally liable for inducing the corporation to breach a contract with a third party unless the officer has engaged in individual separate tortious acts. *A. S. Rampell, Inc. v. Hyster Co.,* 3 N.Y.2d 369, 165 N.Y.S.2d 475, 144 N.E.2d 371 (1957); *Rothschild v. World-Wide Automobiles Corp.,* 24 A.D.2d 861, 264 N.Y.S.2d 705 (1st Dep't 1965), *aff'd,* 18 N.Y.2d 982, 278 N.Y.S.2d 218 (1966); *Greyhound Corp. v. Commercial Cas. Ins. Co.,* 259 App.Div. 317, 19 N.Y.S.2d 239 (1st Dep't 1940). It is nowhere alleged that the individual defendants were acting beyond the scope of their authority, and the face of the complaint acknowledges that they were acting in behalf of the corporation. To the requirement that in order to be held individually responsible the individual defendants must have been engaged in separate tortious conduct, Smith responds that these defendants participated in the commission of what this Court earlier held to be a general tort in the nature of malicious prosecution. Such a tautology simply will not make out a claim. If the underlying conduct which supports this action consists of Fidelity's decision—made by its agents as is every decision of a corporation—to name Smith as a defendant in another action, then whether that action was breach of contract or tort or both it was the act of the corporation and not an "individual and separate [tort] on the part of an agent." *Id.* at 321, 19 N.Y.S.2d at 242.

Therefore, the individual defendants' motion to dismiss the third cause of action is granted.

So ordered.