Andrew CHEN and Chen Printing & Supply Company, Inc., Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 84 Civ. 2695(CBM).

United States District Court, S.D. New York.

Dec. 7, 1987.

Hamilton P. Fox, III, Dewey, Ballantine, Bushby, Palmer & Wood, Washington, D.C., for plaintiffs.

Rudolph W. Giuliani, U.S. Atty., S.D.N.Y. by David R. Lewis, Asst. U.S. Atty., New York City, for defendant.

## OPINION

MOTLEY, Senior District Judge.

Plaintiffs Andrew Chen ("Chen") and Chen Printing & Supply Co., Inc. ("Chen Printing") bring suit against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680 (1982) ("FTCA"), alleging that actions taken by the General Services Administration ("GSA") forced Chen Printing out of business. Presently before this court is the United States' motion to dismiss the complaint or, in the alternative, for summary judgment.

Chen advances three claims, allegedly sounding in generic intentional tort, prima facie tort, and negligence per se. The United States argues that it is immune from suit under a variety of the exceptions to its FTCA waiver of immunity enumerated at 28 U.S.C. § 2680. In particular, the United States suggests that the intentional tort exception, 28 U.S.C. § 2680(h), bars Chen's suit. By a pretrial schedule and order of September 18, 1987, this court

instructed the parties to contribute supplementary briefs addressing the effect, if any, on the present case of our recent decision in *Guccione v. United States*, 670 F.Supp. 527 (S.D.N.Y.1987). When the motion came on for oral argument on November 13, 1987, this court announced that it had determined that in light of *Guccione*, Chen had not stated a claim against the United States, granted the United States' motion, and informed the parties that the present opinion would shortly be issued.[1]

FACTS

*Undisputed Facts* [2]

Chen Printing was incorporated under Delaware law in April 1976. On February 1, 1977, the Small Business Association ("SBA") accepted Chen Printing into its Section 8(a) program.[3] Throughout its existence, indeed, the only work Chen Printing ever did was seven Section 8(a) subcontracts and one competitive contract, all to manufacture computer paper for GSA.

Chen Printing came under GSA investigation in 1979.[4] By May 27, 1981, the investigation resulted in a letter from GSA's Commissioner for Federal Supply Service notifying Chen that he was suspended from contracting with GSA.[5]

Meanwhile, Chen Printing had put in a bid on a subcontract of a Section 8(a) contract for $1.8 million.[6] A "Recommendation for Award" had been drawn up by GSA's New York office and awaited the approval of GSA officials when the May 27 letter was issued. As a result of that letter, Chen Printing was barred from being awarded this subcontract.

Chen appealed to the Board of Contract Appeals. A hearing was ultimately set for August 11, 1981, but GSA lifted the suspension on August 10, obviating the need for a hearing. Chen then tried to reopen negotiations with SBA representatives in Philadelphia and GSA representatives in New York on the $1.8 million contract. Although Chen's SBA contact in Philadelphia received notice of the termination of Chen's suspension and the GSA Commissioner had written to GSA's Inspector General stating that "we plan no further action on this matter at this time," by September 1 GSA's New York office had set in motion a review of Chen Printing's eligibility for the Section 8(a) program. The GSA Inspector General urged the Commissioner for Federal Supply Service and the SBA Administrator to reevaluate Chen Printing's Section 8(a) eligibility.

In December, SBA officials affirmed that Chen Printing was still an eligible Section 8(a) subcontractor. On October 26, however, the GSA Inspector General recommended that debarment proceedings be brought. Chen was not notified of the recommendation until June 11, 1982, by which time he had lost the lease on his printing plant.

The debarment hearing was held on August 5, 1982 by the Board of Contract Appeals. On December 10, 1982, the Board issued an opinion denying the proposed debarment.

*Chen's Contentions*

Chen's complaint alleges tortious conduct by GSA that does not appear from this recitation of the undisputed facts.

1. Chen had also moved in limine to block the introduction into evidence of any of the investigations GSA made of Chen Printing. Because this court grants the United States' motion for summary judgment, there is of course no need to consider Chen's motion.

2. The following account of the facts of this case is taken, except as indicated, from the undisputed facts set out in the parties' joint pretrial order.

3. *See* 15 U.S.C. § 637(a) (Supp.1985). The pretrial order states that one of Chen Printing's "principal contacts" with SBA was Edward Deal of SBA's Philadelphia office.

4. The report of the investigation, submitted on March 17, 1981 by Ronald Maraia and Harvey Volzer of the GSA Inspector General's Office of Special Projects, claimed that Chen had falsified federal tax returns and had committed numerous accounting irregularities. The report recommended a criminal referral to the Department of Justice. Defendant's Notice of Motion, Exh. A.

5. Defendants' Notice of Motion, Exh. E.

6. The bid for this contract was processed at GSA's procurement office in New York.

1. *Intentional Tort.* Chen alleges that not only did GSA not award Chen Printing the $1.8 million subcontract, it delayed its decision while it considered whether or not to suspend Chen Printing, conduct that amounts to a *"de facto* debarment/suspension."[7] First Amended Complaint ¶¶ 15–16. Chen further contends that GSA took or failed to take other actions that violated its own regulations, including: refusing to tell Chen what the purpose of its investigation of Chen Printing was, until being ordered to do so in July 1981 by the Board of Contract Appeals (First Amended Complaint ¶ 18); formally suspending Chen Printing, through the May 27 letter, without notice or a hearing, while its bid on the subcontract was pending (*id.* ¶ 17); requiring recertification by SBA as a condition of doing further business with Chen Printing after the suspension was lifted, thereby imposing, without notice or an opportunity to be heard, a second *"de facto* debarment/suspension" (*id.* ¶¶ 22–24)[8]. Chen maintains that GSA's course of conduct "willfully violated the applicable suspension and debarment laws and regulations of the United States," *id.* ¶ 31, constituting intentionally tortious behavior under New York law and subjecting GSA to FTCA liability. *Id.* ¶ 34.

2. *Prima Facie Tort.* Chen alleges that GSA investigators harassed his wife and children and engaged in racist behavior toward him and his employees.[9] First Amended Complaint ¶ 40. Although the Board of Contract Appeals' opinion that denied the debarment does not uphold these specific claims, it does assert that the investigation "took on a life of its own" and that Chen was "singled out at random" to be the subject of an intrusive yet fruitless investigation. *Id.* ¶ 42. Chen alleges that the *"de facto* debarments/suspen-

sions" were imposed by GSA willfully, in bad faith, and with no intent other than to injure Chen, thus constituting a prima facie tort under New York law. *Id.* ¶¶ 43–45.

3. *Negligence Per Se.* GSA's failure to comply with United States procurement laws and regulations constitutes negligence per se according to Chen; it is thus actionable as a common law tort under New York law, and subjects GSA to FTCA liability. First Amended Complaint ¶¶ 47–49.

### The United States' Response

The United States argues that it is immune under all of the colorably applicable FTCA exemptions as follows: if the investigators indeed expressed racism toward Chen, the United States is immune because the FTCA does not extend to constitutional torts, Defendant's Amended Pretrial Memorandum of Law 15 (relying on *Birnbaum v. United States,* 588 F.2d 319, 327–28 (2d Cir.1978), which held that FTCA liability for violations of "law of the place" extends to violations of state law, not of federal Constitution); the investigation was a discretionary function, exempt under § 2680(a), *id.* at 17–18; if the United States' conduct was tortious under applicable local law, the United States is nonetheless immune under the intentional tort exception § 2680(h), *id.* at 24–28; the United States' conduct was not in fact tortious under local law, *id.* at 30–39; and the United States is immune because it was performing a uniquely governmental function in the Section 8(a) program, *id.* at 27–29; *see* 28 U.S.C. § 2674 (FTCA waiver of sovereign immunity only makes United States liable "in the same manner and to the same extent as a private individual under like circumstances").

---

**7.** Chen applied for the subcontract on January 15, 1981, and GSA's decision was still pending when the suspension letter was sent on May 27, 1981. First Amended Complaint ¶ 15.

**8.** Chen alleges that GSA procurement officials in New York were responsible for the decision to require recertification. First Amended Complaint ¶ 21.

**9.** In an effort to avoid the United States' contention that this claim is barred by the FTCA be-

cause Chen's allegations of racial bias show that the alleged harassing investigation was a constitutional tort, Defendants' Amended Pretrial Memorandum at 15–16, Chen says that those allegations are merely attributions of motive for the investigators' conduct, which is tortious under New York law. Plaintiffs' Memorandum of Law in Reply to Defendant's Amended Pretrial Memorandum at 47–48.

## DISCUSSION

Two issues govern Chen's three claims of intentional tort, prima facie tort, and negligence per se. First, the parties disagree as to the choice of applicable local law. Chen argues that New York law, which recognizes the generic tort categories of intentional and prima facie tort, applies in this case. The United States argues that District of Columbia law, which does not recognize these categories, should apply. Chen appears to accept that the District of Columbia does not recognize these generic torts; at any rate, he does not argue that it does. Thus, it would appear that Chen can only prevail if he is right in contending that New York law applies and if he has indeed stated claims actionable under New York law. As this court will explain, it is this second requirement that defeats Chen's motion. Assuming all of Chen's allegations to be true, whether District of Columbia or New York law applies, Chen has not stated actionable claims. Second, this court will explain how the rationale of *Guccione* requires that Chen's claims be rejected.

### Choice of Law

28 U.S.C. § 1346(b) waives the United States's immunity to damages for "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." It is well established that "law of the place" means "whole law of the place including its choice of law rules." *See, e.g., Richards v. United States,* 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962); *Gelley v. Astra Pharmaceutical Prods.,* 610 F.2d 558, 560 (8th Cir.1979). As the parties agree, both New York and the District of Columbia apply interest analysis in the choice of law.[10] The parties disagree, however, on which jurisdiction has the most significant contacts with this litigation. Chen maintains that New York has the most significant contacts, whereas the United States contends that the District of Columbia does. Hence Chen concludes that both jurisdictions would choose New York law, whereas the United States argues that both would choose District of Columbia law.

This court need not decide which jurisdiction's law applies.[11] This case involves two sets of operative facts: GSA's alleged breach of its own regulations and its allegedly harassing conduct of its investigation.[12] As will be demonstrated, the breach

10. *See Hitchcock v. United States,* 665 F.2d 354, 360 (D.C.Cir.1981) (noting District of Columbia's adoption of interest analysis); *Babcock v. Jackson,* 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E. 2d 279 (1963) (Fuld, J.) (adopting interest analysis in New York).

11. The court notes, however, that the contacts between this litigation and the District of Columbia seem far more significant than those between the litigation and New York. Chen notes that the decision to impose the de facto debarments was made at GSA—New York; the September 1, 1981 letter requesting SBA to recertify Chen Printing issued from GSA—New York; all of Chen's Section 8(a) contracts had been negotiated at GSA—New York; it was GSA —New York that misled plaintiffs about their status and their chances of getting the $1.8 million contract. In most of these cases, however, it is clear that GSA—New York acted essentially as the agent that implemented decisions made at GSA in Washington. For example, GSA— New York sent SBA the letter requiring recertification, but the decision to require recertification was made in Washington. Indeed, the only instance plaintiffs give in which the truly operative acts occurred in New York is GSA—New York's giving Chen the impression that the $1.8 million contract was all but his when, as he claims, GSA had in fact imposed a de facto debarment on him. The claim would seem to be that GSA—New York did not negotiate with him in good faith. This, however, would appear to be a claim based in misrepresentation or deceit, torts both clearly exempted by the terms of § 2680(h).

12. It is important to notice that the intentional tort and negligence per se claims are based on the same set of facts: the alleged de facto debarments, resulting from GSA's failure to obey its own regulations. They differ only in that in Count 1 of his complaint Chen alleges that the breach of regulations was intentional, whereas in Count 3 the alleged fact that regulations were breached is said to constitute negligence per se.

By "harassing conduct of the investigation" the court refers to the investigation's alleged unwarranted prolongation as well as the alleged harassment of Chen's family, the racial epithets allegedly directed at him by the investigators,

of regulations is not actionable under the law of *any* state. The conduct of the investigation, which Chen alleges constitutes a prima facie tort, cannot do so under District of Columbia law, which does not recognize a category of prima facie tort; and even if the conduct of the investigation constitutes a prima facie tort under New York law, our decision in *Guccione* bars an action against the United States.

### District of Columbia Law

It is appropriate to begin with District of Columbia law, because Chen admits that "District of Columbia courts have not embraced a form of generic tort like the *prima facie* tort recognized by New York courts." Plaintiff's Memorandum of Law in Reply to Defendant's Amended Pretrial Memorandum at 44 n.*, quoting *Art Metal U.S.A., Inc. v. United States*, 577 F.Supp. 182, 184 (D.D.C.1983) (discussing constructive debarment as violation of GSA regulations), *aff'd*, 753 F.2d 1151 (D.C.Cir.1985). Thus, Chen does not dispute that under District of Columbia law, his claim of malicious harassment is not actionable under the FTCA.

The parties attach great importance to the District of Columbia Circuit's decision in *Art Metal*. In this court's view they are right to do so, but focus on the case for the wrong reasons. A brief account of the case is necessary to explain its importance.

In the late 1970s Art Metal—U.S.A., Inc. was the Government's largest supplier of metal office furniture. *Art Metal*, 753 F.2d at 1153. After the appearance of a series of newspaper articles "accusing the company of a variety of serious misdeeds and improprieties in its contractual relations with GSA," *id.*, "GSA abruptly ceased doing business with Art Metal by refusing to award several contracts on which Art Metal was the low bidder. In effect, GSA constructively debarred Art Metal without initiating any of the formal debarment or suspension procedures required by federal procurement regulations." *Id.* Art Metal immediately moved for and gained injunctive relief, but the District Court dismissed its FTCA action for negligence, interfer-

ence with prospective advantage, and injurious falsehood.

The Court of Appeals devoted most of its attention to Art Metal's negligence argument, which closely resembles Chen's. Art Metal argued that "the GSA officials' violations of federal procurement regulations constituted negligence or negligence per se cognizable under the FTCA." *Id.* at 1156.

> [Art Metal] first points out that in the District of Columbia, as elsewhere, the elements of a cause of action for negligence are duty, breach, causation, and damages. Next, Art Metal contends that the GSA debarment regulations impose specific duties on GSA officials. The officials breached those duties by violating the clear requirements of the regulations, thereby causing Art Metal to suffer damages. This, Art Metal argues, constituted negligence cognizable under the law of the District of Columbia. Finally, since the regulations violated were designed to protect persons in Art Metal's position against the type of harm that Art Metal suffered, violation of the regulations constitutes negligence per se under District of Columbia law.... Thus, Art Metal argues, GSA officials were negligent per se and liable under the FTCA.

*Id.* at 1157. The Court of Appeals rejected Art Metal's contention that the mere existence of federal regulations established a duty that the GSA officials breached. "It is true that negligent performance of (or failure to perform) duties embodied in federal statutes and regulations may give rise to a claim under the FTCA, but *only* if there are analogous duties under local tort law." *Id.* The Court therefore looked to District of Columbia law to determine whether it established any analogous duties. Holding that "[t]his case is essentially a dispute between a buyer and a seller of goods," *id.* at 1159, the Court found no District of Columbia cause of action for breach of the federal duties Art Metal claimed it was owed by GSA. *Id.* at 1159–60.

and the other reprehensible incidents mentioned in Chen's complaint.

Naturally enough, the United States claims that this court should simply follow *Art Metal*, disposing of Chen's negligence per se claim (and thereby of his intentional tort claim, which is grounded, as noted above, on the same facts). Chen responds that the *Art Metal* court was wrong to construe the GSA–Art Metal relation as one between a buyer and a seller of goods, arguing that the better "analogy" with private parties is that of a trade association and its members. "Indeed," Chen's argument continues, "the courts in New York and other jurisdictions have long recognized that a wrongful suspension, exclusion or other sanction imposed by a private association on a member in violation of the association's rules gives rise to a tort action against the association by the injured member." Plaintiffs' Memorandum of Law in Reply to Defendants' Amended Pre–Trial Memorandum 45–46.[13]

The United States and Chen both fail to appreciate the complexity of the District of Columbia Circuit's argument in *Art Metal*. The Court indeed announces a general holding that federal law duties can give rise to an actionable claim under the FTCA only if local law imposes analogous duties, and it indeed searches for but does not find a tort in District of Columbia law that corresponds to a GSA constructive debarment. Both parties, however, seem to take this to be the whole story, so that—as Chen suggests—if the local law of a jurisdiction other than the District of Columbia did impose tort duties analogous to the federal duty not to impose constructive debarments, GSA would be liable under the FTCA in that jurisdiction.

This court does not agree that that is the whole story. For at the very end of its opinion the Court of Appeals asserts that *no* local law could give rise to analogous duties. The reason is that the rights meant to be secured by the regulations GSA disobeys in cases of constructive debarment are *due process* rights. They are, that is, rights of constitutional dimension. Therefore there could not be an analogous tortious violation of local law.[14]

---

**13.** Chen cites several New York cases, but no District of Columbia cases, for the proposition that wrongful sanctions by a private association can give rise to a tort cause of action for the wronged member. Chen offers no support for his analogy, however, apart from the observation that the Government stands in a relation of dominance or even adhesion over the contractor, as the private professional association does over its members. For the reasons explained in the text, even if one is persuaded by this observation it does not follow that New York law imposes duties analogous to the federal duties GSA allegedly breached in its dealings with Chen.

**14.** It is worth comparing the analysis offered by the District Court in *Art Metal*, which seems to have placed its principal reliance on the ground that there is no District of Columbia tort corresponding to a GSA constructive debarment. The District Court at least hinted at the constitutional argument offered by the Court of Appeals when it said that "to the extent that [the complaint] allege[s] that the government acted wrongfully by constructively debarring plaintiff from competing for future contracts, without holding a hearing, in violation of GSA's regulations and *arguably in violation of the Constitution,* [it] fail[s] to state a valid tort claim under District of Columbia law." 577 F.Supp. at 194 (footnote omitted) (emphasis added).

The omitted footnote is important. It cites *Myers & Myers, Inc. v. United States Postal Ser-* *vice,* 527 F.2d 1252, 1258–59 (2d Cir.1975), on which Chen relies heavily in another context. The relevant passage from *Myers & Myers* is as follows: "Where a federal agency takes action to debar a private firm from further business relations with that agency, the effect is far different from that of simply denying an application for a contract. [The *Myers & Myers* court then quotes *Gonzalez v. Freeman,* 334 F.2d 570, 578 (D.C.Cir.1964) on the potential economic injury of debarment and to the effect that '[c]onsiderations of basic fairness' require full due process protections, including notice and a hearing, before debarment.] Denial of notice and a hearing before debarment would 'give rise to serious constitutional issues,' [*Gonzalez v. Freeman* ] at 579...."

The *Myers & Myers* court held that Myers & Myers had the right to procedural safeguards before debarment, but also held that Myers & Myers had not shown that it had a right of action under the FTCA. Unfortunately, the court went on to speculate that the Postal Service's actions "may" have constituted interference with prospective business advantage or negligence per se. 527 F.2d at 1260–61. In this court's view, the Court of Appeals's opinion in *Art Metal* shows why such speculation is entirely inappropriate. Even if this court's analysis of *Art Metal* is mistaken, moreover, our opinion in *Guccione,* as explained *infra,* shows why the Second Circuit's speculation is incorrect.

The *Art Metal* District Court's remark that constructive debarment is "arguably" in viola-

■ The United States quotes the beginning of the passage in which the Court of Appeals asserts that GSA's failure to adhere to its debarment regulations does not constitute a tort under District of Columbia law:

> It is true that GSA officials failed to give Art Metal the process due it under the procurement regulations. Because the regulations do not embody duties recognized under District of Columbia tort law, however, they do not assist Art Metal in this FTCA action.

753 F.2d at 1160. This leaves the United States open to the response Chen actually makes: even if there is no tort corresponding to constructive debarment under District of Columbia law, there could be one under New York law, especially if it is recognized that the Court of Appeals was mistaken in regarding GSA as standing to its contractors as a buyer to a seller. The continuation of the passage makes it quite clear that Chen's response is in fact foreclosed:

> An examination of the regulations indicates that they essentially impose duties on GSA officials to deal fairly with government contractors. Moreover, the "fairness duties" are required of the government *as a government* under the due process clause of the United States Constitution. As Art Metal itself recognizes, the regulations are "designed to protect contractors' due process rights, liberty interests, and economic interests from an arbitrary, capricious, unfair, or incorrect debarment." Brief for Appel-

lant at 33. These constitutional rights are guaranteed under *federal law*, not local law. Thus an alleged violation of these rights is not remediable under the FTCA.... The FTCA's local law requirement may not be circumvented merely by casting the alleged constitutional wrong as negligence.

753 F.2d at 1160 (citations omitted) (emphasis in original). This passage makes two points. First, the GSA's duty to obey its own regulations is a *constitutional* duty to which, in consequence, no local tort *could* correspond.[15] Second, in talking about due process rights required of the government *"as a government"* the Court of Appeals is implying that there is no corresponding situation in which a private person would be liable. Therefore, the FTCA, which waives the United States' tort liability to the extent that a private person would be liable in like circumstances, would never apply in a case of deprivation of due process rights.[16]

It is especially noteworthy that Chen's complaint actually *says* that "These laws and regulations were designed to protect contractors' procedural due process rights and their economic interests in uninterrupted business relations with the government, free from arbitrary, capricious, unfair or incorrect suspension or debarment." First Amended Complaint ¶ 32. As noted in the quotation from *Art Metal*, this very passage appeared in Art Metal's brief before the Court of Appeals, and that court perfectly clearly says that violations of such

---

tion of the Constitution indicates that it did not fully endorse the argument. However, it at least acknowledges the argument, and calls attention to the fact that in *Myers & Myers* the Second Circuit *did* endorse the argument, which therefore binds the courts of this District.

**15.** Thus, the fact that there is no corresponding District of Columbia tort is not really the point: there could not be a corresponding New York tort either.

**16.** In this light, the *Art Metal* District Court's remark about the absence of prima facie torts in the District of Columbia seems also to miss the essential point. The Court of Appeals is implying that even if Chen could draw his analogy between constructive debarment and prima fa-

cie tort, his argument would still fail because he cannot draw an analogy between GSA and a prima facie tortfeasor. The prima facie tortfeasor has no *constitutional* duty to refrain from committing prima facie torts, and the GSA's constitutional duty to guarantee its contractors due process is, as the court emphasizes, a matter of federal law—no state law guarantees federal constitutional due process, and the denial of due process is not a prima facie tort. Of course, there is a remedy for constitutional torts committed by Government agents, namely a *Bivens* action. However, as a creature of federal law a *Bivens* action cannot be brought under the FTCA. *Brown v. United States*, 653 F.2d 196, 201 (5th Cir.1981), *cert. denied*, 456 U.S. 925, 102 S.Ct. 1970, 72 L.Ed.2d 440 (1982) (cited at this point by the *Art Metal* court).

rights and interests by the Government are not remediable under the FTCA.

■ Thus, if *Art Metal*'s analysis is sound, both the United States and Chen have overlooked the fact that there *could* be no remedy under the FTCA, in the District of Columbia, in New York, or in any other state, for Chen's claim of negligence per se, because it is in fact a disguised constitutional tort claim. And because the intentional tort claim, as mentioned, is actually duplicative, arising out of just the same allegations as the negligence per se claim, it is affected equally—fatally—by these arguments. This court must grant summary judgment to the United States on Counts 1 and 3 of Chen's complaint.

Only Count 2, the prima facie tort count, remains, and, as noted, Chen does not dispute that the District of Columbia has not recognized the category of prima facie tort. Thus, it is only necessary to consider whether a claim for prima facie tort would lie under New York law against GSA if it were a private party. (It is necessary to note that the acts Chen complains of in his prima facie tort claim are those that constituted the allegedly wrongful and harassing conduct of the GSA investigation.[17])

■ The elements of prima facie tort are infliction of intentional harm; lack of excuse or justification; harm inflicted by an act that would otherwise be lawful; and special damages. *ATI, Inc. v. Ruder & Finn, Inc.*, 42 N.Y.2d 454, 458, 398 N.Y.S.

2d 864, 866, 368 N.E.2d 1230, 1232 (1977); *Royal Abstract Corp. v. Golenbock & Barell*, 129 Misc.2d 929, 494 N.Y.S.2d 613 (1985), *aff'd*, 121 A.D.2d 852, 503 N.Y.S.2d 702 (1986). Chen does plead special damages for both the prima facie and generic intentional tort claims. First Amended Complaint ¶ 35 (intentional tort); *id.* ¶ 46 (prima facie tort). We can assume that GSA acted with that "disinterested malevolence" the New York Court of Appeals has said characterizes prima facie tort (*Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 333, 464 N.Y.S.2d 712, 721, 451 N.E.2d 459, 468 (1983)), and without excuse or justification. On that assumption, Chen's allegations of harassment state a claim of prima facie tort. Nonetheless, under our decision in *Guccione* that claim (as well as Chen's wrongful debarment claims) is barred by § 2680(h).

### *Guccione*

In *Guccione*, the plaintiff, a well-known entertainment entrepreneur, claimed that he failed to secure an Atlantic City casino license because of the malicious, intentionally tortious, and unsupervised activity of Melvin Weinberg, a notorious "con man" who played a central role in the FBI's ABSCAM investigations in the late 1970's. Guccione claimed that Weinberg tried to persuade him to bribe New Jersey casino licensing officials and, when Guccione declined, defamed him to prospective lenders. We dismissed Guccione's claim against the

---

**17.** If Chen's claim were that the alleged wrongful debarment were a prima facie tort, it would run up against the requirement that the acts constituting prima facie tort be otherwise lawful. The debarment was allegedly wrongful because GSA violated its own regulations, so that GSA's actions would *not* otherwise have been lawful.

The investigation as Chen describes it, however, nicely fits the characterization of prima facie tort offered in *Royal Abstract Corp. v. Golenbock & Barell*, 129 Misc.2d 929, 494 N.Y.S.2d 613, 615 (1985), *aff'd*, 121 A.D.2d 852, 503 N.Y.S.2d 702 (1986): "The hallmark of prima facie tort is not that the common law tort is committed, but that a lawful act is performed, which because of its malicious motive calls for legal remedy." 494 N.Y.S.2d at 615.

It is true that the New York Court of Appeals said in *Board of Education v. Farmingdale Class-*

*room Teachers' Association, Inc.*, 38 N.Y.2d 397, 406, 380 N.Y.S.2d 635, 644, 343 N.E.2d 278, 284 (1975), that "[W]henever there is an intentional infliction of economic damage, without excuse or justification, [the New York Court of Appeals] will eschew formalism and recognize the existence of a cause of action." This would seem to allow the wrongful debarments to count as prima facie torts as well, inasmuch as the "otherwise lawful" requirement might seem formalistic. *Board of Education*, however, was the case that introduced the generic notion of "prima facie" or "intentional" tort (labels to which it refused to attach importance, see *id.* at 405, 380 N.Y.S.2d at 644, 343 N.E.2d at 284). It is clear that the later cases cited in the text trace a *development* in New York law, such that "prima facie tort" has become a label specifically attached to actions that satisfy the "otherwise lawful" requirement.

United States, which was grounded on the theory that the FBI negligently supervised Weinberg, breaching its duty to supervise him so as to avoid injuring Guccione.

The portion of *Guccione* relevant to the present case is its analysis of Guccione's negligent supervision theory. Following recent and explicit statements by the Second Circuit,[18] we held that the claim of negligent supervision "arose out" of intentional torts enumerated in § 2680(h), notably libel, slander, misrepresentation, deceit, and interference with contract rights, and therefore was barred by § 2680(h) just as much as claims explicitly pleaded in terms of the enumerated torts.[19]

The Second Circuit was clearly right to hold that "arising out of" in § 2680(h) must be read at least broadly enough to encompass claims sounding in negligence, because otherwise an artful pleader could evade Congress' intent in enacting § 2680(h) simply by pleading intentional tort claims in terms of a negligence theory.[20] Thus, as we held in *Guccione:*

There can be no question, from the clear language of plaintiff's complaint, that Guccione's claims arise out of the alleged intentional torts of both Weinberg and the FBI's own agents. Thus, regardless of whether they are pleaded as claims grounded in the intentional torts themselves, or as claims against the FBI for its negligent supervision of Weinberg, Guccione's claims are barred by the intentional torts exception to the FTCA....

*Guccione,* at 530.

In response to this court's request for briefing on *Guccione,* the United States seems content to take our decision as further confirming its position. Chen, however, argues vigorously that *Guccione* differs completely from the present case and can only be taken to support the United States if it is grievously distorted.

Chen offers two arguments for the irrelevance of *Guccione* to this case. First, he asserts, § 2680(h) bars only actions for the intentional torts it enumerates; because it

---

**18.** *Miele v. United States,* 800 F.2d 50, 52 (2d Cir.1986); *Johnson v. United States,* 788 F.2d 845, 850–51 (2d Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 315, 93 L.Ed.2d 288 (1986).

**19.** Section 2680(h) reserves the United States' immunity as to

Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: *Provided,* That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso [March 16, 1974], out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

Members of the GSA Inspector General's Office are not "investigative or law enforcement officers of the United States Government" within the meaning of the 1974 proviso, as is made manifest by 40 U.S.C. § 318d (1982), which provides that

Officials or employees of the General Services Administration who have been duly autho-

rized to perform investigative functions may be empowered by the Administrator of General Services ... to act as nonuniformed special policemen.... Any such special policeman may make arrests without warrant for any offense committed upon ... property [under the charge and control of the General Services Administration] if he has reasonable ground to believe (1) the offense constitutes a felony under the laws of the United states, and (2) that the person to be arrested is guilty of that offense.

This is the only federal statute that gives members of the Inspector General's Office any of the defining powers of an investigative or law enforcement officer, and that only on property controlled by the GSA. Given the inapplicability of this statute and the absence of any other allegation that the Chen investigators were investigative or law enforcement officers within the meaning of the 1974 proviso, the court concludes that the proviso does not apply in this case, and that the United states retains immunity in this case as to all the enumerated torts.

**20.** *See, e.g., Miele,* 800 F.2d at 52: "Allowing claims against the government that are stated in negligence, but actually arise from an assault and battery would defeat Congress' purpose to bar suits against the government for injuries caused by a government employee's commission of assault and battery."

does not enumerate the idiosyncratic New York generic intentional tort or prima facie tort, or the tort of negligence per se, it does not bar suits based on these torts. Plaintiff's Memorandum of Law on *Guccione v. United States* at 529–30. Second, even if the "arising out of" language of § 2680(h) is read, as it was in *Guccione*, to bar suits that are supported by the same underlying facts that would support a suit expressly barred by § 2680(h), to take Chen's suit to be barred for this reason would conflict with the Supreme Court's decision in *Block v. Neal*, 460 U.S. 289, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983).[21] *Id.* at 632. Obviously, this court does not view § 2680(h) as barring *only* suits based on the enumerated torts: thus, it is necessary to consider only Chen's second argument, and to determine whether his suit is saved by *Block v. Neal*.

■ In *Block*, the plaintiff had obtained a loan from the Farmers Home Administration ("FHA") for a prefabricated house. After plaintiff moved into the house she discovered defects which her complaint attributed to FHA's negligence in supervising the construction of the house. The FHA argued that Neal's claim was one of "misrepresentation" and, therefore, was barred by § 2680(h). The Supreme Court rejected this argument, holding that Neal's complaint alleged that FHA had breached its duty to use due care in ensuring that the builder follow FHA-approved plans and cure all defects before finishing construction. A claim for misrepresentation would have alleged a breach of the duty to use due care in communicating information to Neal. The importance of *Block* is that the Supreme Court noted such a claim was also available to Neal. Had she asserted it, *it* would clearly have been barred by § 2680(h), but that fact did not mean that Neal's actual negligence claim was barred by § 2680(h), even though it had elements in common with the hypothetical misrepresentation claim.

> Common to both the misrepresentation and the negligence claim would be certain factual and legal questions, such as whether [FHA] officials used due care in inspecting Neal's home while it was under construction. But the partial overlap between these two tort actions does not support the conclusion that if one is excepted under the Tort Claims Act, the other must be as well. Neither the language nor history of the Act suggests that when one aspect of the Government's conduct is not actionable under the "misrepresentation" exception, a claimant is barred from pursuing a distinct claim arising out of other aspects of the Government's conduct.

460 U.S. at 298, 103 S.Ct. at 1094. If *Block* can be taken to apply to the whole of § 2680(h) rather than to the misrepresentation exception alone,[22] Chen's argument emerges. If there is a "partial overlap" between two tort claims, that is, the existence of *some* common questions of law and fact, and one claim is barred by § 2680(h), the other is not. Chen maintains that his case manifests such partial overlap. His prima facie tort, intentional tort, and negligence per se claims have some elements in common with claims for interference with contract rights, abuse of process, malicious

---

**21.** Moreover, Chen argues, his claims are not simply disguised versions of the barred enumerated torts. He asserts that he is not pleading the correct elements to state claims under the enumerated torts. For example, he says that he is not claiming intentional interference with contractual relations because he is not saying that GSA interfered with his relations with a *third party*. The court takes this argument to have no independent force. Chen's failure to plead all and only the elements of the barred enumerated torts either is a matter of artful pleading, or it is not. If it is, his claims are barred just as if he had pleaded the correct elements. If it is not, the court must analyze Chen's claims under *Block v. Neal*, to determine whether they are independent of the barred torts. This analysis is carried out *infra*.

**22.** The misrepresentation exception was the only § 2680(h) exception before the Court in *Block*. Possibly there is evidence that it is the only exception the Court was addressing in its reasoning that "Any other interpretation would encourage the Government to shield itself completely from tort liability by adding misrepresentations to whatever otherwise actionable torts it commits." 460 U.S. at 298, 103 S.Ct. at 1094. Possibly the Court would have said "misrepresentations or other torts excepted under § 2680(h)" if that is what it meant.

prosecution, and deceit and misrepresentation, but this partial overlap should not bar his claims, because they sound in New York common law tort causes of action.

This argument, though worthy of serious consideration, overlooks a crucial feature of the holding in *Block*. The Supreme Court was able to hold that Neal had a viable tort claim because "[i]n this case ... the Government's misstatements are not *essential* to plaintiff's negligence claim." 460 U.S. at 297, 103 S.Ct. at 1094 (emphasis supplied). The *Block* Court was not saying that complete overlap with a barred claim is necessary to vitiate a nonenumerated tort claim. What is necessary is overlap of an essential element of the nonenumerated claim.

The point is illustrated by *Guccione*. Guccione's claim of negligent supervision by the FBI of Mel Weinberg was assuredly not identical with Weinberg's tortious behavior, which consisted of such exempted torts as libel and slander. Nonetheless, any negligent supervision claim will overlap essentially with the underlying activities of the supervisee, because one of its essential elements is causation. Guccione would have had to show not only that the FBI agents had and breached a duty of due care in supervising Weinberg, but also that their breach of duty caused the harm Weinberg did him—which necessarily requires that he show that Weinberg in fact did him harm, in the form of the barred torts of libel and slander.

■ Similarly, Chen's generic New York tort claims necessarily implicate torts barred under § 2680(h). Chen's intentional tort/negligence per se claim of wrongful debarment requires that Chen show that GSA's actions prevented him from acquiring contracts he would have otherwise acquired—that is, that GSA interfered with Chen's business advantage. His claim that GSA—New York failed to negotiate for the $1.8 million contract in good faith clearly requires him to show that GSA misrepresented its intentions in bargaining with him, and is therefore clearly barred by the misrepresentation exception.

Thus, this court concludes that Chen's claims are barred by the FTCA, as construed in *Guccione* and *Block v. Neal*, in virtue of arising out of the same essential facts as certain torts excepted by enumeration in § 2680(h). The court concludes independently that Chen's intentional tort and negligence per se claims are constitutional in character and therefore barred by the "law of the place" requirement of § 1346(b). In consequence, summary judgment for the United States is required on all Chen's claims.