**Andrew CHEN and Chen Printing and Supply Co., Inc., Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

**No. 953, Docket 88–6013.**

United States Court of Appeals, Second Circuit.

Argued April 7, 1988.

Decided Aug. 11, 1988.

ing") commenced an action in the United States District Court for the Southern District of New York (Motley, J.) against defendant-appellee United States of America ("the government") under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671–80 (1982 & Supp. IV 1986). Chen's complaint alleged claims of negligence per se, intentional tort and prima facie tort against the General Services Administration ("GSA"), based on GSA's alleged violations of federal procurement regulations during (1) the investigation of Chen Printing's operations and (2) the proceedings to suspend and debar Chen Printing as a government contractor. Chen sought $2.5 million damages for loss of investment in, income to, and salary from Chen Printing allegedly caused by GSA's actions.

Upon the government's motion, the district court granted summary judgment in its favor, holding that Chen's claims for GSA's alleged violations of federal procurement regulations were not actionable under state law and that all of his claims arose out of intentional torts barred by the intentional tort exception to the FTCA, 28 U.S.C. § 2680(h). *See Chen v. United States,* 674 F.Supp. 1078, 1089 (S.D.N.Y.1987). Plaintiffs appeal from this judgment. Because we find that Chen has failed to set forth any claim cognizable against a private party under applicable state law, we affirm without reaching the issue of whether any exceptions to the FTCA apply to bar Chen's claims.

Hamilton P. Fox, III, Washington, D.C. (Scott P. Perlman, Dewey, Ballantine, Bushby, Palmer & Wood, Washington, D.C., of counsel), for plaintiffs-appellants.

David R. Lewis, Asst. U.S. Atty. (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., Richard W. Mark, Asst. U.S. Atty., New York City, of counsel), for defendant-appellee.

Before OAKES and MINER, Circuit Judges, POLLACK,* District Judge.

MINER, Circuit Judge:

Plaintiffs-appellants Andrew Chen and Chen Printing and Supply Co. ("Chen Print-

## BACKGROUND

Chen Printing, established in 1976 by its president and sole shareholder, Andrew Chen, was a paper supplier accepted into the Section 8(a) Program of the Small Business Act, 15 U.S.C. § 637(a) (1982 & Supp. IV 1986), in February 1977. Under the Act, federal agencies such as the GSA set aside certain supply requirements for which the Small Business Administration ("SBA") contracts with minority-owned firms. During 1977–81, Chen Printing per-

* Hon. Milton Pollack, Senior United States District Judge for the Southern District of New York, sitting by designation.

formed seven subcontracts and one competitive contract to supply computer forms to GSA. All the contracts were approved by GSA's New York office, and the company had no business other than that obtained under the Section 8(a) Program.

In 1979, the Office of the GSA Inspector General in Washington, D.C. opened an investigation into possible illegality relating to Chen Printing's participation in the Section 8(a) Program. An informal investigation led to a formal investigation of Chen Printing in October 1979. Chen maintains that despite his full cooperation with the government, the Inspector General refused to explain the reasons prompting the investigation. While the investigation continued, Chen Printing submitted a bid in January 1981 to GSA's New York office for a Section 8(a) contract involving $1.8 million of business. A "Recommendation for Award" was prepared by the New York office on April 28 and approved by procurement officers on May 6. The final award of the subcontract required approval by other GSA officials. Then, by letter dated May 27, GSA's Commissioner for Federal Supply Service, acting upon a May 15 recommendation from the GSA's Inspector General, notified Chen that Chen Printing was suspended from contracting or subcontracting with GSA as a result of the formal investigation. The investigators' report, which had been submitted on March 17, charged that Chen had made false claims and statements to the government and had falsified a federal tax return. Referral of the matter to the Justice Department for possible criminal prosecution was also recommended. The Commissioner's letter effectively barred the award of the $1.8 million subcontract to Chen Printing. Chen appealed to the Board of Contract Appeals. A hearing scheduled for August 11 before that body was never held, however, because GSA withdrew the suspension on August 10.

Subsequently, Chen's attorney wrote to the SBA in Philadelphia and the GSA in New York seeking to resume negotiations on the $1.8 million contract Chen had sought. The GSA Commissioner wrote to the Inspector General on August 25 that " 'the information furnished by your office does not sustain suspension action, and we plan no further action on this matter at this time,' " Jt.App. at 28 (Joint Pre-trial Order ¶ 28). On September 1, GSA New York requested that SBA determine whether Chen Printing remained an eligible Section 8(a) subcontractor and notified Chen's counsel that GSA was in the process of determining whether Chen Printing satisfied the "responsible contractor" criteria under federal procurement regulations. In a September 4 memorandum to the Commissioner, the Inspector General wrote that there was " 'sufficient cause . . . to reevaluate Chen's eligibility in the SBA's 8(a) program prior to the award of any contracts to the SBA on behalf of Chen Printing,' " *id.* at 29 (¶ 31). The Inspector General also recommended in a September 14 letter to the SBA Administrator that Chen's eligibility be reevaluated. SBA reaffirmed Chen's eligibility on December 11, but Chen lost his only printing plant that month for failure to pay rent.

The GSA Inspector General meanwhile had recommended in an October 26 memorandum that debarment proceedings be brought against Chen Printing. Not until June 11, 1982 was Chen notified that GSA proposed to debar him and his company from GSA contracting and that Chen Printing was suspended from consideration for contract awards pending the conclusion of the debarment proceeding. The Board of Contract Appeals held a hearing in August 1982 and denied the proposed debarment in an opinion issued December 10, 1982.

Chen filed this action in 1984. Judge Motley dismissed his original complaint with leave to replead. Chen's amended complaint contained three claims against the government: (1) negligence per se, (2) intentional tort and (3) prima facie tort. Chen based his negligence per se and intentional tort claims on allegations that GSA negligently and willfully violated federal procurement regulations by, *inter alia:* delaying the award of the $1.8 million contract while it considered suspending Chen Printing, constituting a "de facto debarment/suspension"; refusing to inform

**625**

Chen of the purpose of its investigation; formally suspending Chen Printing, without prior notice or hearing, during the pendency of the $1.8 million contract award; and imposing a second "de facto debarment/suspension" by requiring, without prior notice or hearing, that the SBA reaffirm Chen's eligibility for the Section 8(a) Program before considering Chen Printing for future contracts or continuing business relations with it. For his prima facie tort claim, Chen alleged that (1) GSA imposed the "de facto debarments/suspensions" wrongfully, maliciously and in bad faith, with the sole motivation to injure him, and (2) GSA investigators, with malice and ill will, harassed his wife and children, made racist comments to him, and acted in a racist manner towards his Asian employees.

The government moved to dismiss Chen's amended complaint or, alternatively, for summary judgment. Following supplemental briefing requested by Judge Motley on how the disposition of the motion was affected by *Guccione v. United States*, 670 F.Supp. 527 (S.D.N.Y.1987) (Motley, J.), *aff'd*, 847 F.2d 1031 (2d Cir.1988), summary judgment was granted in favor of the government. Judge Motley held that Chen's complaint failed to state claims for negligence per se or intentional tort under state law. Because "the rights meant to be secured by the regulations GSA disobeys in cases of constructive debarment are *due process* rights" guaranteed by the federal constitution, "there could not be an analogous tortious violation of local law" as required under the FTCA, 674 F.Supp. at 1084 (footnote omitted); *see id.* at 1086.

Nor would such violations support Chen's claim for prima facie tort, Judge Motley found, because "it would run up against the requirement that the acts constituting prima facie tort be otherwise lawful," *id.* at 1086 n. 17.

Alternatively, Judge Motley found that all of Chen's claims were barred by the intentional tort exception, 28 U.S.C. § 2680(h), of the FTCA. Comparing Chen's claims with those she dismissed in *Guccione*, Judge Motley found that essential to each of Chen's claims was proof of intentional torts barred under § 2680(h): His claims based on wrongful *"de facto* debarment/suspension" would require proof of interference with contract rights, and his allegations concerning harassment and GSA's bad faith in the process of awarding the $1.8 million contract would require proof of malicious prosecution as well as deceit and misrepresentation. *See* 674 F.Supp. at 1088–89.

On appeal, Chen challenges the district court's characterizations of the claims in his complaint and contends that he in fact has stated claims under New York law properly cognizable under the FTCA. We affirm the decision of the district court because the facts pleaded by Chen fail to make out any claim assertable against a private party under New York tort law,[1] and therefore we need not reach the issue of the applicability of exceptions to the FTCA.

## DISCUSSION

 Under the FTCA, the federal government's waiver of sovereign immuni-

---

**1.** Because the actions of which Chen complains were taken by GSA in both Washington, D.C. and New York, the parties disagree over which local law is applicable. Chen argues that New York law should apply, while the government contends that District of Columbia law is applicable. The district court declined to decide this issue, holding that GSA's alleged violation of its own regulations "is not actionable under the law of *any* state," 674 F.Supp. at 1082–83, and that the District of Columbia "does not recognize a category of prima facie tort," *id.* at 1083. We agree with the district court that it is unnecessary to decide the issue, because Chen's claims are not viable under the law of New York, as will be discussed *infra*, or the District of Colum-

bia. The D.C. Circuit has considered whether an alleged de facto debarment of a contractor by GSA, involving allegations very similar to those here, gave rise to a cause of action under District of Columbia tort law that was not precluded by the § 2680(h) intentional tort exception. *See Art Metal–U.S.A., Inc. v. United States*, 753 F.2d 1151, 1159–60 (D.C.Cir.1985). The court concluded that it did not. *See id.* at 1160. Moreover, as Judge Motley recognized, the District of Columbia has "not embraced a form of generic tort like the *prima facie* tort recognized by New York courts," *Art Metal–U.S.A., Inc. v. United States*, 577 F.Supp. 182, 184 (D.D.C. 1983), *aff'd*, 753 F.2d 1151 (D.C.Cir.1985).

ty extends only to those torts committed by government employees "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the [tortious] act or omission occurred," 28 U.S.C. § 1346(b); *see id.* § 2674 (United States liable "in the same manner and to the same extent as a private individual under like circumstances"); *Feres v. United States,* 340 U.S. 135, 141, 71 S.Ct. 153, 157, 95 L.Ed. 152 (1950). Thus, for liability to arise under the FTCA, a plaintiff's cause of action must be "comparable" to a "cause of action against a private citizen" recognized in the jurisdiction where the tort occurred, *C.P. Chemical v. United States,* 810 F.2d 34, 37 (2d Cir.1987) (discussing "private party analog requirement"), and his allegations, taken as true, must satisfy the necessary elements of that comparable state cause of action, *Nichols v. Block,* 656 F.Supp. 1436, 1446 (D.Mont. 1987); *see United Scottish Ins. Co. v. United States,* 614 F.2d 188, 195–96 (9th Cir.1979). The allegations of Chen's complaint neither meet the requirement of a "private party analog" nor state a cause of action under New York law.

A. *Lack of Private Party Analog*

■ All of Chen's claims, except that for racial harassment during the GSA investigation, are grounded in alleged negligent and willful violations of federal procurement regulations, specifically, those requiring that a contractor receive notice and a hearing prior to any suspension, 41 C.F.R. §§ 1–1.605–3, 1–1.605–4, or debarment, *id.* § 1–1.604–1. *See* Complaint ¶¶ 31 (intentional tort), 43 (prima facie tort), 48 (negligence per se); Appellant's Brief at 23. The FTCA's "law of the place" requirement is not satisfied by direct violations of the Federal Constitution, *see Contemporary Mission, Inc. v. U.S.P.S.,* 648 F.2d 97, 104–05 n. 9 (2d Cir.1981); *Birnbaum v. United States,* 588 F.2d 319, 328 (2d Cir.1978), or of federal statutes or regulations standing alone, *Cecile Indus., Inc. v. United States,* 793 F.2d 97, 100 (3d Cir.1986); *Art Metal–U.S.A., Inc. v. United States,* 753 F.2d 1151, 1157–58 (D.C.Cir.1985); *Birnbaum,*

588 F.2d at 328; *Nichols,* 656 F.Supp. at 1444–45. The alleged federal violations also must constitute violations of duties "analogous to those imposed under local law," *Cecile Indus.,* 793 F.2d at 100 (quoting *Art Metal,* 753 F.2d at 1158). Consequently, "as to certain governmental functions, the United States cannot be held liable, for no private analog exists." *C.P. Chemical,* 810 F.2d at 37.

■ Federal procurement regulations "essentially impose duties on GSA officials to deal fairly with government contractors," *Art Metal,* 753 F.2d at 1160, and guarantee rights "required of the government *as a government* under the [fifth amendment] due process clause of the United States Constitution," not as a private individual under local law, *id.* Chen's complaint even acknowledges that these regulations "were designed to protect contractors' procedural due process rights and their economic interests in uninterrupted business relations with the government, free from arbitrary, capricious, unfair or incorrect suspension or debarment," Complaint ¶ 32 (quoted at 674 F.Supp. at 1085). Clearly, violation of the government's duties under federal procurement regulations "is action of the type that private persons could not engage in and hence could not be liable for under local law," *Jayvee Brand v. United States,* 721 F.2d 385, 390 (D.C.Cir.1983). *Compare Birnbaum,* 588 F.2d at 326 (opening and reading of sealed mail by CIA, just as if by private party, violates common-law right of privacy).

Chen nonetheless contends that New York case law involving wrongful sanctions by private associations against individual members provides the proper private party analog. Even if we were to accept the contention that the relationship between a private association and its members, along with the rights and duties involved in that relationship, are analogous to the relationship between the GSA and a private contractor such as Chen, we still would not find the violation of any duty "analogous to th[at] imposed under local law." None of the New York cases cited by Chen, and no

case we have discovered, recognizes a cause of action *in tort* for an association's violation of its own rules. *See Tedeschi v. Wagner College*, 49 N.Y.2d 652, 660, 427 N.Y.S.2d 760, 764, 404 N.E.2d 1302, 1305 (1980) (suspended students entitled to hearing under law of associations and as matter of essential fairness); *Madden v. Atkins*, 4 N.Y.2d 283, 294–95, 174 N.Y.S.2d 633, 641, 151 N.E.2d 73, 78 (1958) (union members recover for wrongful expulsion based on contract); *Vanderbilt Museum v. American Ass'n of Museums*, 113 Misc.2d 502, 509–10, 514, 449 N.Y.S.2d 399, 404–05, 407 (Sup.Ct.1982) (hearing ordered in Art. 78 petition under law of associations and "fair play"). Nor, as Chen argues, does *Myers & Myers, Inc. v. U.S.P.S.*, 527 F.2d 1252, 1260–61 (2d Cir.1975), hold otherwise. There, we merely recognized that plaintiffs *might* be able to show on remand that the alleged violation of regulations by the Postal Service stated a cause of action under local law. However, we expressly "le[ft] this matter for further consideration by the district court," *id.* at 1261, and there is no indication that the plaintiffs were able to "show a violation of a duty for which the applicable state law would provide recovery," *id.*

### B. Failure to State a Claim under Local Law

Even if the violation of federal procurement regulations had a private party analog, none of Chen's claims, including that for racial harassment by GSA investigators, state a cause of action for negligence per se, prima facie tort or intentional tort cognizable under New York law.

### 1. Negligence Per Se

 In New York, the "unexcused omission" or violation of a duty imposed by statute for the benefit of a particular class "is negligence itself," *Martin v. Herzog*, 228 N.Y. 164, 168, 126 N.E. 814 (1920) (emphasis in original); *see Willy v. Mulledy*, 78 N.Y. 310, 314 (1878); *Doe v. United States*, 520 F.Supp. 1200, 1202 (S.D.N.Y. 1981). However, it is "long and firmly established in New York that the violation of a rule of an administrative agency" is

" 'merely some evidence' " of negligence but "does not establish negligence as a matter of law" because a regulation "lack[s] the force and effect" of a statute, *Long v. Forest–Fehlhaber*, 55 N.Y.2d 154, 160, 448 N.Y.S.2d 132, 134, 433 N.E.2d 115, 117 (1982) (quoting *Teller v. Prospect Hgts. Hosp.*, 280 N.Y. 456, 460, 21 N.E.2d 504 (1939)). *See Zimmer v. Chemung Cty. Perf. Arts, Inc.*, 65 N.Y.2d 513, 522, 493 N.Y.S.2d 102, 106, 482 N.E.2d 898, 901 (1985); *Conte v. Large Scale Dev. Corp.*, 10 N.Y.2d 20, 29, 217 N.Y.S.2d 25, 29, 176 N.E.2d 53, 56 (1961). The facts alleged by Chen involve only the violation of the notice and hearing requirements under the debarment regulations, *see* 41 C.F.R. § 1–1.604–1, and suspension regulations, *see id.* §§ 1–1.605–3, 1–1.605–4. Thus, Chen states no cause of action for negligence per se under New York law. Although the district court in *Doe v. United States* recognized a cause of action under New York law for breach of administrative regulations, 520 F.Supp. at 1201–02, such a holding here must be rejected in the face of the flatly contrary statements of the law by New York's highest court.

### 2. Intentional and Prima Facie Tort

 In New York, causes of action for intentional tort and prima facie tort share common elements, *see Board of Educ. v. Farmingdale Classroom Teachers Ass'n*, 38 N.Y.2d 397, 406, 380 N.Y.S.2d 635, 644, 343 N.E.2d 278, 284 (1975); *Socialist Workers Party v. Attorney General*, 463 F.Supp. 515, 522 (S.D.N.Y.1978). These elements are "(1) the intentional infliction of harm, (2) causing special damages, (3) without excuse or justification," *Curiano v. Suozzi*, 63 N.Y.2d 113, 117, 480 N.Y.S.2d 466, 469, 469 N.E.2d 1324, 1327 (1984); *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 332, 464 N.Y.S.2d 712, 720, 451 N.E.2d 459, 467 (1983). The two actions differ only in that prima facie tort requires that the acts complained of "would otherwise be lawful." *Curiano*, 63 N.Y.2d at 117, 480 N.Y.S.2d at 469, 469 N.E.2d at 1327, but for defendant's " 'disinterested malevolence,' " *Lindner*, 59 N.Y.2d

at 333, 464 N.Y.S.2d at 721, 451 N.E.2d at 468 (quoting *American Bank & Trust Co. v. Federal Reserve Bank*, 256 U.S. 350, 358, 41 S.Ct. 499, 500, 65 L.Ed. 983 (1921)), while intentional tort involves "means which are illegal and corrupt," *Socialist Workers Party*, 463 F.Supp. at 523. *See Morrison v. National Broadcasting Co.*, 24 A.D.2d 284, 293, 266 N.Y.S.2d 406, 415 (1965), *rev'd on other grounds*, 19 N.Y.2d 453, 280 N.Y.S.2d 641, 227 N.E.2d 572 (1967). However, a set of facts giving rise to a common-law tort is fatal to a prima facie tort claim (and by analogy, to a claim for intentional tort) for "once a traditional tort is established the cause of action for prima facie tort disappears," *Curiano*, 63 N.Y.2d at 117, 480 N.Y.S.2d at 469, 469 N.E.2d at 1327; *Sadowy v. Sony Corp.*, 496 F.Supp. 1071, 1076 (S.D.N.Y.1980).

 The facts set out in Chen's complaint would give rise to at least three traditional common-law torts: malicious prosecution, intentional misrepresentation, and tortious interference with business relations.[2]

The institution of the two debarment proceedings and Chen's suspension from contracting during those periods constitute malicious prosecution, "the malicious institution of judicial proceedings without probable cause ... which finally end[ ] in failure," *Curiano*, 63 N.Y.2d at 118, 480 N.Y.S.2d at 469, 469 N.E.2d at 1327.

Chen also alleges that GSA failed to notify Chen that it was considering whether to suspend Chen Printing and therefore delayed acting on his application for the $1.8 million contract, during which time Chen Printing purchased raw materials in preparation for the contract. *See* Complaint ¶¶ 15–16. In fact, among Chen's pretrial Contentions of Fact were that:

> GSA–New York misled Mr. Chen, Chen Printing, their attorney, Mr. Fox and even SBA–Philadelphia about the status of the proposed $1.8 million subcontract by telling them that delays in awarding the contract were caused by personnel shortages at GSA–New York, whereas in fact GSA–New York had determined, based on information they received from GSA investigators, not to award any contracts or subcontracts to Mr. Chen or Chen Printing pending a decision by GSA whether to suspend them. During this very period, Chen Printing, in anticipation [of] being awarded the $1.8 [million] subcontract, purchased more than $1 million in raw materials and printed more than $800,000 in finished product for that subcontract.

Joint App. at 41 (Joint Pre-trial Order ¶ 35(e)). These allegations clearly constitute an action for intentional misrepresentation (called "fraud" in New York), which requires that defendant, knowingly and with intent to deceive, make a false representation upon which plaintiff reasonably relies to his detriment. *See Meese v. Miller*, 79 A.D.2d 237, 240–41, 436 N.Y.S.2d 496, 499 (1981); *Freschi v. Grand Coal Venture*, 551 F.Supp. 1220, 1230 (S.D.N.Y. 1982); *see also Murray v. Xerox Corp.*, 811 F.2d 118, 121 (2d Cir.1987).

Finally, Chen's complaint alleges that "[b]ecause it lost its lease, and because of the shortage of funds resulting from the formal suspension and *de facto* debarments/suspensions," Chen Printing was prevented from obtaining any future government or private contracts. *See* Complaint ¶ 26. These allegations constitute a claim for tortious interference with business relations, which "occurs when defendant uses unlawful means to disrupt plaintiff's business, resulting in injury," *Della Pietra v. State*, 125 A.D.2d 936, 938, 510 N.Y.S.2d 334, 336 (1986), *aff'd*, 71 N.Y.2d 792, 530 N.Y.S.2d 510, 526 N.E.2d 1 (1988); *see Sommer v. Kaufman*, 59 A.D.2d 843, 843–44, 399 N.Y.S.2d 7, 8 (1977).

---

**2.** These torts, of course, could not be asserted as causes of action themselves under the FTCA. Malicious prosecution and misrepresentation actions are explicitly barred by the intentional tort exception. *See* 28 U.S.C. § 2680(h). Moreover, "as ... nearly every court that has addressed th[e] issue" has held, *Art Metal*, 753 F.2d at 1155 & n. 5 (footnote omitted), actions for tortious interference with business (*i.e.*, prospective) advantage "are barred as claims arising out of interference with contract rights," *id.* at 1155.

■ Chen's remaining factual allegations concerning his claim of racial harassment by GSA investigators are pleaded in support of his prima facie tort claim. However, they fail to state a prima facie tort claim for two reasons. First, "there is no recovery in prima facie tort unless malevolence is the sole motive for defendant's otherwise lawful act," *Lindner*, 59 N.Y.2d at 333, 464 N.Y.S.2d at 721, 451 N.E.2d at 468; *see Curiano*, 63 N.Y.2d at 117–18, 480 N.Y.S.2d at 469, 469 N.E.2d at 1327. Even if one or more GSA investigators were motivated by malice, the factual allegations here fail to establish that malice was the sole motivation for their acts. This failure is applicable to Chen's other allegations advanced under the prima facie tort theory, for Chen's allegations do not establish that GSA was motivated solely by malice as to those actions Chen calls *"de facto* debarments/suspensions," or that GSA's charges were so completely unfounded that malice must have been the agency's only motive.

■ Second, neither racial harassment, nor for that matter GSA violation of federal procurement regulations, constitutes conduct that is otherwise lawful. *See Morrison*, 24 A.D.2d at 293, 266 N.Y.S.2d at 415 (no prima facie tort "where the conduct is purposively corrupt ..., intentional as to consequences, or utilizes vicious means"). Of course, racial harassment and violation of federal regulations can never constitute "lawful" conduct whatever the consequences intended or the means used.

## CONCLUSION

In light of the foregoing, we affirm the judgment of the district court.